# JOHN A. WALKER

## *v.*

## THE JOSEPH DIXON CRUCIBLE COMPANY.

1. A voluntary transfer of stock, by its owner, perfected by delivery and acceptance, becomes an executed contract and is irrevocable by the owner, for it was founded upon the mutual consent of the parties in reference to a right or interest passing between them.

2. A married woman may not bind herself by promise to pay the debts of another, but she is invested with power to dispose of her property and may transfer it to secure the payment of the debt of another, and when she has actually made such transfer, she cannot afterwards, at will, avoid it.

On petition by receiver for direction to sell stock.

*Mr. Joseph D. Bedle,* for the petitioner.

*Mr. John Linn,* for Jane H. Cleveland.

*Mr. Otto Crouse,* for Frances H. D. Tillman.

THE CHANCELLOR.

The petitioner, Edward F. C. Young, was appointed receiver of The Joseph Dixon Crucible Company, an insolvent corporation, in January, 1881. At that time Orestes Cleveland, who had been president of the company, was indebted to it in a large amount. To secure the payment of this indebtedness, on the 28th of February, A. D. 1881, he confessed a judgment in favor of the receiver for $55,117.49, and $5 costs, and, about the same

time, delivered to the receiver five certificates of stock of the insolvent company, one for two hundred shares, belonging to himself, and four, for stock aggregating three hundred and thirty shares, belonging to his wife, Jane H. Cleveland. Upon the backs of each of the stock certificates belonging to Mrs. Cleveland was a power of attorney, in blank, to sell and transfer the stock, signed by her and witnessed by her husband. The receiver insists, that when Mrs. Cleveland's stock was delivered to him it was assigned absolutely, to the end that he might thereafter sell it and apply the proceeds of sale towards the payment of his judgment against Mr. Cleveland, and he now applies to this court for direction in such sale.

On the part of Mrs. Cleveland it is contended, that the stock was assigned to the receiver merely as collateral security for the payment of his judgment against Mr. Cleveland, and that Mrs. Cleveland assented to such assignment without realizing its character and effect; that no consideration was given by the receiver for the assignment; that the receiver has not disposed of the stock, and no equities have intervened which necessitate or justify his retention of it, and also, that the assignment was unlawful, because, being a married woman, Mrs. Cleveland could not become surety for the payment of a debt of another person.

Contention between Mrs. Cleveland and the receiver as to the character of the assignment, whether absolute or by way of security, arose in September, 1882, when Mrs. Cleveland gave notice to the receiver and the officers of the Crucible company that she was a stockholder, and forbade the transfer of any stock then standing in her name. Almost immediately after that notice the receiver caused the disputed stock to be transferred on the books of the company from Mrs. Cleveland to himself, and since then, both he and Mrs. Cleveland have tenaciously clung to their respective insistments as to the character of the assignment, but the validity of the assignment, at least as collateral security for Mr. Cleveland's debt, has never been denied until now. On the contrary, it has been repeatedly recognized by Mrs. Cleveland with marked deliberation. In January, 1883, in order to secure the payment of a promissory note made by her and her husband

to John F. Ward, she, by writing, signed and sealed in the presence of her own counsel, pledged certain of her securities, and among them (in the language of the instrument),

"Three hundred and thirty shares of the capital stock of said Crucible company belonging to me, but now in pledge to such company and in possession of Edward F. C. Young as receiver of said company."

Again, in July of the same year, an election of stockholders was directed by the chancellor, and Mrs. Cleveland petitioned in writing, verified by her oath, for leave to vote upon the stock which she had transferred to the receiver, alleging that the transfer had been made with her assent in order that the stock might be held as collateral security for her husband's indebtedness. And yet again, in September, 1889, another election of the stockholders having been ordered, she presented another petition to the chancellor, verified by her oath, in precisely the same terms as the petition of July, 1883. She did not in any of these instruments give the least intimation that she had not in the first instance understood the effect of her assent to the pledging of her stock.

And I do not understand that by her testimony in the present application Mrs. Cleveland means to say that her assent to her assignment of her stock to the receiver was obtained by any species of fraud or duress, and it is quite clear from her admissions that if she failed to understand the full effect of the assignment originally, she subsequently realized it and acquiesced in the situation it made for her. She says that her stock was pledged to the receiver with her "perfect willingness," and that she understood "perfectly" the allegations of her petitions of 1883 and 1889, which explained the character and effect of the pledge.

The transfer to the receiver does not need consideration to support it against Mrs. Cleveland. As to her it may be treated as a voluntary gift, made perfect by delivery and acceptance, so that it became an executed contract and irrevocable, for it was founded upon the mutual consent of the parties in reference to a right or interest passing between them. *2 Kent Com. 438; Grover* v.

Walker *v.* Dixon Crucible Co.

*Grover, 24 Pick. 261; Betts* v. *Francis, 1 Vr. 152, 155.* And it does not appear that claims of creditors interfere to affect its validity as to others. The pledge to Mr. Ward, now held by Mrs. Frances H. D. Tillman, who is a party in this application, was made subsequent to the assignment to Mr. Young and expressly subject to it.

It is not necessary to the disposition of this matter that I shall now determine the question of fact, whether the assignment of the stock, to the receiver, was absolute or by way of security. The amount remaining due upon the receiver's judgment against Mr. Cleveland is so large that it is hardly within the bounds of possibility that the proceeds of the sale of the stock will be sufficient to pay it. For all practical purposes, then, if Mrs. Cleveland had capacity to lawfully assign the stock as collateral security for her husband's debt, her insistment, that the assignment was by way of collateral security, may be treated as true.

It is settled in this state that a married woman may not bind herself by promise to pay the debt of another, but that she is completely invested with power to dispose of her property, and may transfer it to secure the payment of another's debt, and that when she has actually made such disposition, she cannot afterwards, at will, avoid it. *Warwick* v. *Lawrence, 16 Stew. Eq. 179.* In the case just cited, Chief-Justice Beasley, writing the opinion of the court of errors and appeals, illustrates the difference between such an executed contract by a married woman and a contract which is merely executory, by the case of a bond and mortgage given by her to secure the debt of another person. He says: "The contract in the bond, being executory, cannot be enforced against her, but the conveyance by the mortgage, being executed, her title can be foreclosed in equity, as has been frequently decided by the courts of this state."

Here, as we have seen, the assignment to the receiver was completely executed, and within the authority cited it is therefore irrevocable by Mrs. Cleveland. In the performance of his trust it is the duty of the receiver to retain the stock and apply it to the purposes for which it was pledged.

I will direct the receiver to sell the stock in question at public sale. Out of the proceeds of sale he will pay the balance due upon his judgment against Mr. Cleveland, and if there should be a surplus, upon notice to Mrs. Cleveland and Mrs. Tillman, he may apply for further instructions.