JESSIE FARRELL, administratrix,

*v.*

THE PASSAIC WATER COMPANY et al.

[Decided September 19th, 1913.]

1. Nothing is better settled than that there is no equity to perfect an imperfect gift. A man may transfer his property without valuable consideration in one of two ways; he may either do such acts as amount in law to a conveyance or assignment of the property and thus completely divest himself of the legal ownership, in which case the person who by those acts acquires the property takes it beneficially or on trust as the case may be; or the legal owner of the property may by either one of the modes recognized as amounting to a valid declaration of trust, constitute himself a trustee and without an actual transfer of the legal title may so deal with the property as to deprive himself of its beneficial ownership and declare that he will hold it from that time forward in trust for the other person.

2. The several modes of assignment are as applicable to the case of gifts as to those of transfers for value. The gift is just as completely vested by the one mode as by the other, and it is settled law that the fact that a bond is not payable to bearer, and that the instrument is not negotiable, does not prevent a valid gift of it by manual tradition without writing.

3. Where A.. a business man of mature years, possessed of considerable property, while engaged to be married to Miss F.. handed her a coupon bond of the Passaic Water Company for one thousand dollars. registered as to principal in the name of A., and on its face payable to bearer or registered holder thereof, and providing that it "may at any time be registered in the name of the owner on the books of the company; * * * after which this bond shall be transferable only upon the books of the company, until it shall, at the request of the holder, be registered as payable to bearer, which shall restore transferability by delivery," and although he lived for six or seven years after it came into Miss F.'s possession, did not reclaim it, reclamation being all the more easy because of the fact that the bond stood registered in his name, and told a friend that he had made Miss F. a present of a bond of that description, and she took the interest accruing upon it for ten or twelve years before her death—*Held,* that it was natural, situated as they were, that he should have made a gift, and there being no evidence against it, the inference that a gift was actually made was the only fair inference from the proofs.

4. The gift did not remain incomplete because of the clauses in the bond, which provide that it is payable to the bearer or registered holder, and that if registered it shall be transferable only on the books of the company, until it shall, at the request of the holder, be registered payable to bearer *"which shall restore transferability by delivery."*

5. There are two kinds of corporation bonds in common use to-day: those that are negotiable, and those that are merely assignable. The object of the clause in question was to give the owner the option of having either the one form of obligation or the other, at his pleasure.

6. The failure to direct the company to make a transfer on its books, standing by itself, is without significance as long as it is the doctrine of this court that a valid gift may be made by parol. Proof of failure to make in one way is no proof of failure to make in another.

7. The administratrix of Miss F. having requested the defendant company to register the bond in question, and such request having been refused, this court will compel a performance of the company's agreement to register the bond. A suit for damages based on the refusal to do so would not be a complete or satisfactory remedy.

*Mr. Josiah Dadley* and *Mr. Clifford L. Newman,* for the complainant.

*Mr. Robert H. Cunningham,* for the defendants.

STEVENS, V. C.

This is a bill filed by the administratrix of Catherine Farrell against the Passaic Water Company and the executors of James Atkinson. It is alleged that Mr. Atkinson was engaged to be married to Miss Farrell, and that about the year 1905, and while so engaged, he handed her a coupon bond of the Passaic Water Company for $1,000, intending to make her a gift of it. The bond was, at the time of the alleged gift, and still is, registered, as to principal, in the name of Atkinson. The principal sum is payable in July, 1937. Miss Farrell drew the interest coupons during her life and died in 1909. Atkinson died in 1902. Since the death of Miss Farrell, the bond has been in the possession of either her next of kin or her administratrix. On its face it provides that it is payable to the bearer or registered holder thereof and that it

"may at any time be registered in the name of the owner on the books of the company; * * * after which this bond shall be transferable only upon the books of the company, until it shall, at the request of the holder, be registered as payable to bearer, which shall restore transferability by delivery."

The bill prays that the bond may be declared to be a part of the estate of Catherine Farrell, and that the company may be decreed to register it in the name of her administratrix.

The defence is, first, that no gift is proven, and second, that if an intention to give has been shown, such gift was imperfect without registry and a court of equity will not lend its aid to perfect it.

Nothing is better settled than that there is no equity to perfect an imperfect gift. Says Sir George Jessel, M. R., in *Richards* v. *Delbridge, L. R. 18 Eq. 11:* "The principle is a very simple one. A man may transfer his property without valuable consideration in one of two ways: he may either do such acts as amount in law to a conveyance or assignment of the property and thus completely divest himself of the legal ownership in which case the person who by those acts acquires the property takes it beneficially or on trust, as the case may be; or the legal owner of the property may by one or other of the modes recognized as amounting to a valid declaration of trust constitute himself a trustee and without an actual transfer of the legal title may so deal with the property as to deprive himself of its beneficial ownership and declare that he will hold it from that time forward in trust for the other person."

There is nothing in this case to indicate that Atkinson declared that he held the bond in controversy as trustee for Miss Farrell. What he did was, not to set it aside among his own papers and to declare in any way that from that time forth, he held it for her benefit, but to give her the possession of it, and, as far as appears, concern himself no further about it. If, says the master of the rolls, in the case cited, the gift is intended to take effect by transfer, the court will not hold the intended transfer to operate as a declaration of trust, for then every imperfect instrument would be made effectual by being converted into a perfect trust.

If, then, the complainant has a valid title, it must be because Atkinson completely divested himself of all title.

I think considerable confusion has resulted from the use, in some of the later cases, of the term "equitable" in connection with the title of the assignee to a chose in action. If by "equitable" is meant such a title as only a court of equity can give effect to, the assumption is manifestly erroneous If a right is recognized, and protected by a court of law (of course, I am speaking of those jurisdictions in which the courts of law and equity are still constitutionally distinct), and if such a court has come to be the proper tribunal in which to enforce it, it is a misuse of terms to call the right equitable in contradistinction to legal.

The history of the law on this subject is somewhat curious. In the time of Coke, the property in the paper on which an obligation was written and in the wax with which it was sealed could be divorced from the property in the debt which the paper manifested. He says (*Fol. 232b § 377*):

"it is implied that if a man hath an obligation, though he cannot grant the thing in action, yet he may give or grant the deed, viz., the parchment and wax, to another who may cancel and use the same at his pleasure."

This distinction constituted the basis of decision by the Lords-Justices in *Rummens* v. *Hare, 1 Ex. D. 169,* as late as 1876.

Property in the debt evidenced by the paper stood on a different footing. As the advantages arising from commerce began to be felt, the custom of merchants whereby a foreign bill of exchange was assignable by the payee to a third person so as to vest in him the *legal* as well as the equitable title, was recognized and supported by the English law courts as early as the fourteenth century, and a like custom rendering an inland bill transferable was established in the seventeenth century. *Chit. Bills *10.* Promissory notes were put upon the footing of inland bills by the statute of *7 Anne.* Other choses in action long stood upon a different footing. Lord Coke (*214a*) says that it is one of the maxims of the common law that no right of action can be transferred,

"because under color thereof pretended titles might be granted to great men. whereby right might be trodden down and the weak oppressed, which the common law forbiddeth."

But the necessities of trade and commerce were too strong for this maxim, and courts of equity at an early period began to recognize the interest of the assignee. During this period the title of the assignee was equitable, and equitable only. Then the law courts began, indirectly at first, to recognize his right. In *Winch* v. *Keeley, 1 T. R. 619 (A. D. 1787)*, they did so for the first time explicitly. There a suit was brought in the name of the assignor for the use of the assignee. The defence was that the assignor had become bankrupt and that his title had passed to his assignee in bankruptcy. It was held that the title had not passed and that the suit would lie. Having recognized and protected the assignee's right, it became, at least to some extent, a mere question of procedure whether the suit should be brought in the one name or the other. This was the view of Mr. Justice Buller in *Master* v. *Miller, 4 T. R. 341 (A. D. 1791)*. He says: "It must be admitted that though the courts of law have gone the length of taking notice of choses in action and acting upon them, yet in many cases they have adhered to the formal objection that the action shall be brought in the name of the assignor and not in the name of the assignee. I see no use or convenience in preserving that shadow when the substance is gone, and that it is merely a shadow is apparent from the later cases in which the courts have taken care that it shall never work injustice." Still, in England, the action continued for many years to be brought in the name of the assignor. But it became mere form, for, said Chief-Justice Hornblower, in *Allen* v. *Pancoast, 20 N. J. Law (Spenc.) 68:* "It has long since been held that an assignment of a chose in action carries with it by implication a right to use the name of the assignor even against his consent and in opposition to his release or defeasance of the debt or security assigned."

It is going pretty far to call the right of such an assignee, so protected, an *equitable* in contradistinction to a *legal* right. But when our legislature in 1797 enacted that the

"assignment of bills, bonds and other writings obligatory for the payment of money shall be good and effectual in law and an assignee of any such may thereupon maintain an action of debt in his own name,"

the only excuse for calling the assignee's title equitable vanished. *Reed* v. *Bambridge, 4 N. J. Law (1 South.) 358.* The legal title to the wax and paper had always been in the assignee, the legal title to the debt was now also in the assignee.

It thus conclusively appears that the aid of a court of equity to perfect the title of an assignee to a sealed bond for the payment of money is unnecessary, for the right is perfect already. Agreements to assign stand upon quite another footing. If based upon valuable consideration, equity may sometimes enforce them; if not so based, it will not.

Then a perfectly distinct question arises. By what formalities may title be vested in an assignee? At first it was held that an instrument under seal could only be assigned by an instrument of equal dignity (*Wood* v. *Partridge, 11 Mass. 488*) ; but this view has been abandoned, and it is now held that instruments such as bonds, mortgages and policies of insurance may be assigned by writing without seal, or even by parol accompanied by delivery. *Vreeland* v. *Van Horn, 17 N. J. Eq. (2 C. E. Gr.) 137; Travelers Insurance Co.* v. *Grant, 54 N. J. Eq. (9 Dick.) 208; Allen* v. *Pancoast, 20 N. J. Law (Spenc.) 71.* The effect of the assignment is precisely the same in any of these forms—it vests the legal title in the assignee. The proof of it may be more difficult in the case of an assignment by parol, but in any mode the debt theretofore owing to the obligee passes to the assignee; he is the creditor, and the only creditor.

These several modes of assignment are as applicable to the case of gifts as to those of transfers for value. The gift is just as completely vested by the one mode as by the other, and it is settled law that the fact that the bond is not payable to bearer or that the instrument is not negotiable does not prevent a valid gift of it by manual tradition without writing. *Executors of Egerton* v. *Egerton, 17 N. J. Eq. (2 C. E. Gr.) 421; Corle* v. *Monkhouse, 50 N. J. Eq. (5 Dick.) 537; Travelers Insurance Co.* v. *Grant, 54 N. J. Eq. (9 Dick.) 208; Thompson* v. *West, 56 N. J. Eq. (11 Dick.) 660.* Proof of delivery, coupled with

proof of intent to pass a present interest by way of gift, has precisely the same effect as a formal written transfer. A moment's consideration will show that this is necessarily so. The instrument given remains, in either case, unchanged. If payable by A to B it remains so payable on the face of it, whether transferred by writing or not; but by the effect of the transfer, what theretofore was payable to B has in law become payable to C, the transferee. In the case of *Green* v. *Tulane, 52 N. J. Eq.* (*7 Dick.*) *169,* the question was not before the court. I do not think it can be fairly gathered from what Vice-Chancellor Pitney said that he thought that a writing was necessary, but if he there so expressed himself, when the point came squarely before him, in the *Insurance Case,* he held otherwise. The question then is, did Atkinson make a gift—that is, a perfect gift? Two objections are made—*first,* it is said that the proof fails to show delivery accompanied with a declaration of intent, and *secondly,* that the instrument itself forbids the making of a gift in the manner in which it is alleged to have been made.

As to the first objection: The evidence is that Atkinson, a business man of mature years, possessed of considerable property, while engaged to be married to Miss Farrell, parted with the bond in question; how or when does not appear. Although he lived for six or seven years after it came into Miss Farrell's possession, he did not reclaim it; reclamation being all the more easy because of the fact that the bond stood registered in his name. He told a friend that he had made Miss Farrell a present of a bond of that description. She took the interest accruing upon it for ten or twelve years before her death. It was natural that, situated as they were, he should have made a gift, and there is no evidence against it. Under these circumstances, I think the inference that a gift was actually made is the only fair inference from the proofs.

But counsel argues that, conceding that an intention to give is proved, the gift remains incomplete because of the clauses in the bond, which provide that it is payable to the bearer or registered holder, and that if registered, it shall be transferable only on the books of the company, until it shall, at the request of the holder, be registered payable to bearer, *"which shall restore transferability by delivery."*

There are two kinds of corporation bonds in common use to-day—those that are negotiable and those that are merely assignable. It seems quite apparent that the object of the clause in question was to give the owner the option of having either the one form of obligation or the other, at his pleasure. It is hardly to be supposed that the company was endeavoring to put upon the market a new kind of obligation, viz., one, *title* to which would not pass from one man to another unless or until there was an actual transfer on the books. The implied prohibition against transfer would be just as effective in the case of a written assignment, even an assignment under seal, as in the case of a verbal one. There might indeed be a question whether such a limitation could be made effective; but here, I do not think it was intended to impose it. The clause was probably suggested by the similar one put in the ordinary stock certificate, as to which Chancellor Green said: "The title of the holder is in nowise affected by a provision in the charter or by-laws of the corporation that the stock is transferable only on the books of the corporation. Such a provision is intended merely for the protection and benefit of the corporation." The fact that in the one case the provision is intended chiefly to protect the company and in the other the bondholder, can make no difference, so far as the point under consideration is concerned. It is well settled that as between the transferrer and transferee, title to the stock certificate is completely vested without transfer on the books. *Matthews* v. *Hoagland, 48 N. J. Eq. (3 Dick.) 486.*

But it is said that the failure to direct the company to make a transfer on its books is evidence that Atkinson did not intend his gift to be irrevocable. If the facts justify the inference that he did so intend, proof that he failed to authorize the company by power of attorney to make a transfer is immaterial. He had, I have shown, the option of making the gift with or without writing. Such failure might indeed be a circumstance militating against the gift, if coupled with other circumstances throwing doubt upon it. Standing by itself, it is without significance as long as it is the doctrine of this court that a valid gift may be made by parol. Proof of failure to make in one way is no proof of failure to make in another.

Considering, as I do, that the question as between the administratrix of Miss Farrell and the executor of Mr. Atkinson is one of legal title—title of which the law courts take cognizance—it would seem to follow that if there were a real doubt as to who was legal owner, that doubt would have to be, under our system, settled by the law courts. There is, however, no dispute as to the material facts and no reasonable doubt as to the inference to be drawn from them. The case seems really to be one between the administratrix and the water company; Atkinson's executors being proper parties because their testator stands upon the company's books as registered owner. There is proof that a request to register was made by the administratrix and that such request was refused. If a court of equity has jurisdiction to decree a registry of stock (*Archer* v. *American Water Co., 50 N. J. Eq.* (*5 Dick.*) *50; Reilly* v. *Absecon Land Co., 75 N. J. Eq.* (*5 Buch.*) *71*), I see no good reason why it may not compel performance of the company's agreement to register the bond. A suit for damages, based on a refusal to do so, would not be a complete or satisfactory remedy.

Under the peculiar circumstances of the case neither party should have costs.