The admitted facts of this case are, briefly, these: On September 7th, 1895, Henry F. Coffin, the father of complainant, George W. Coffin, and Charles H. Coffin, his brother, organized a corporation under the laws of this state, known as the Hammond Beef Company of New Jersey. Simultaneously with the organization of the company, the incorporators entered into an agreement which reads as follows: *Page 9 
"Agreement as to stock. We, Charles H. Coffin, George W. Coffin, Philip L. Coffin and Melvin R. Dyer, each holding shares of stock in the Hammond Beef Company, of Harrison, N.J., a corporation organized and existing under the laws of New Jersey, do for and in consideration of the sum of one dollar to each of us in hand paid this day the receipt whereof is herewith acknowledged, do hereby agree for and in consideration of the same, that if any one or more of us for any reason whatsoever desire to withdraw or resign from such corporation above named or do not or will not devote their entire time in the interest of the said business, or if we engage in any other business or occupation to the detriment of the Hammond Beef Company of Harrison, N.J., we must and will first offer for sale within thirty days such share or shares of stock held by us and in our respective names, to Henry F. Coffin, who shall have the right to purchase the same at the par value per share. And if for any reason the said Henry F. Coffin refuses to buy the said share or shares of stock offered for sale, then the holder or holders shall offer the same for sale to any original stockholder or stockholders; and if any or all of them refuse to purchase the same, then such person so desiring to sell the said share or shares of stock may offer the same for sale to anyone who may desire to buy.
In witness whereof, we have hereunto set our hands and seals, this seventh day of September, eighteen hundred and ninety-five.
 [Signed] CHARLES H. COFFIN GEORGE W. COFFIN PHILIP L. COFFIN MELVIN R. DYER
[Witness] HORACE C. GRICE."
On October 21st, 1902, George W. Coffin sold his stock to Charles H. Coffin and Philip L. Coffin, according to the terms of the contract.
On January 14th, 1905, Henry F. Coffin died, and his administratrix sold his stock to Charles H. Coffin and Philip L. Coffin, according to the terms of the contract.
Charles H. Coffin died on July 26th, 1926, seized of twenty-eight and one-half shares of the stock.
Complainant desires to compel his executors to transfer this stock, claiming a right under the above-quoted agreement.
I cannot see any justification for such a demand. The contract is clear and unambiguous. It provides that if any one of the parties desire to withdraw or resign or do not or will not devote his entire time to the business, then the stock must first be offered as provided for in the agreement. *Page 10 
The contract throughout shows that every condition of the contract implies volition. Not a word is said about death. Certainly it cannot be argued that withdrawal by death implies volition. Even the words "do not and will not devote their entire time" presuppose some voluntary action. This agreement should be construed according to the plain meaning of the words contained in it, and the intention of the parties is that which is expressed in the writing.
The court of errors and appeals said in Thompson v. TrentonWater Power Co., 77 N.J. Law 672, approving and adopting the rule of construction laid down by Lord Wensleydale in Grey v.Pearson, 6 H.L.C. 61:
"The grammatical and ordinary sense of the words is to be adhered to, unless that would lead to some absurdity, or some repugnance or inconsistency with the rest of the instrument, in which case the grammatical and ordinary sense of the words may be modified so as to avoid that absurdity and inconsistency, but no further."
If this clause were in a contract for personal services, would there be any doubt that the parties meant that while the obligor was alive he would devote his entire time?
In the case of Nichols v. Olympia Veneer Co., 135 Wn. 8;236 Pac. Rep. (1925) 794, each stockholder signed a contract which provided that if he "is absent from duty from an unavoidable cause, he, his heirs or assigns shall receive his shares of the profits, c., less the cost of a capable person to fill his position." Nichols, a stockholder, died. For a time, the corporation paid Nichols' wife the difference between what stockholders received and the wages of a non-stockholding employe. In spite of this practical construction by the parties, the court held —
"It is the contention of respondent that this provision provides for any possible contingency including death, and this was the view of the trial court because of the fact that the word `heirs' was contained in the clause. But we think this construction too broad. It would strain the meaning of the language used to assume that one who is dead is `absent from duty from an unavoidable cause.' One who is *Page 11 
dead is not absent from duty. There is no duty devolving upon him. Duty refers to those things which are required of a person, and at death all duty ceases. * * * It will be seen, therefore, that the payments made by appellant to respondent after her husband's death of the difference between the wage paid to the stockholder employe and to the hired employe were not required by the contract."
If "absent from duty from an unavoidable cause" does not include death, even when coupled with the words of survivorship, certainly "do not or will not devote their entire time," without words of survivorship cannot include death.
In my opinion, the contract is without ambiguity. It seeks to control willful withdrawal, and nowhere in it is there any mention of or contemplation of death. This being so, evidence of surrounding circumstances is inadmissible because immaterial. The fact that the administratrix of Henry F. Coffin sold the stock in accordance with the agreement has no bearing on the present case. It was her right to do so if she conceived it to be for the best interests of her estate. Such action, however, by no means binds the executors of Charles H. Coffin to a similar action. They can sell on any terms which seem to them to the best interests of the estate, or, if the will permits, retain the stock.
I will only cite two authorities on this point. In the recent case of Bellisfield v. Holcombe, 102 N.J. Eq. 20, 27,
Chancellor Walker says:
"It is a primary canon of construction of contracts that all the rules are subordinate to the leading principle that the intention of the parties is to be collected from the entire instrument and must prevail, unless it is subversive of some established rule of law, and that, in the case of ambiguity, the court may resort to proof of the circumstances under which the contract was made, to aid in ascertaining such intention. UnitedBoxboard and Paper Co. v. McEwan Bros. Co. (N.J. Ch.),76 Atl. Rep. 550, 553.
"* * * That means, of course, that where the cause is heard by the chancellor, the trier of fact as well as of law, that extrinsic evidence is admissible before him in aid of the *Page 12 
situation and the better to enable him to arrive at a proper result. But where the agreement speaks for itself [that is, where from its four corners its true intent and meaning are to be gathered], parole evidence is inadmissible."
And in the case of Rogers v. Colt, 21 N.J. Law 704, the court of errors and appeals declared:
"The contract must undoubtedly be construed according to the intention of the parties. But that intention is to be gathered from the contract itself. If there be no ambiguity in the contract, if the contracting parties have declared their intention in plain and unequivocal language, there can be no construction against the words of the contract. We may not alter the terms which the parties themselves have adopted, or make a new contract for them. The construction must be agreeable to the common understanding of the terms used, without regarding technical meaning or grammatical propriety. And it must be upon the whole contract, so that one clause or phrase may qualify, enlarge, restrain, or even totally defeat another."
For these reasons I will advise a decree dismissing the bill.