197 N.J. Super. 152 (1984)
484 A.2d 344
LEE R. HILL, PLAINTIFF-RESPONDENT-CROSS-APPELLANT,
v.
WARNER, BERMAN & SPITZ, P.A., AND STEPHEN LEVITT, DEFENDANTS-APPELLANTS-CROSS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 9, 1984.
Decided November 16, 1984.
*156 Before Judges KING, DEIGHAN and BILDER.
Novins, Farley, Grossman & York, P.A., attorneys for defendants-appellants-cross-respondents (Richard A. Grossman, of counsel; Ann Haskell, on the brief).
*157 Abrams & Gatta, P.A., attorneys for plaintiff-respondent-cross-appellant (Robert A. Abrams, of counsel; Norma F. Rosenbloom, on the brief).
The opinion of the court was delivered by DEIGHAN, J.A.D.
Defendants, Warner, Berman and Spitz, P.A., and Stephen Levitt appeal from that part of a judgment entered by the Chancery Division on June 20, 1983 requiring Spencer Blessing, an officer, director and shareholder of The Professional Agency, Inc. (Professional), to turn over his 50 1/2 shares of stock in the corporation to plaintiff, Lee R. Hill. Plaintiff cross-appeals from a dismissal of his complaint; (1) against Warner, Berman and Spitz, P.A. for possession of the books and records of The Professional Agency, Inc. and (2) against (a) Stephen Levitt for profits allegedly due from a subsidiary business in Middlesex County; (b) Spencer Blessing and Stephen Levitt for monies due on a promissory note in the sum of $12,000, and (c) against Blessing and Levitt for the imposition of a resulting or constructive trust on stock held by them. We affirm.
Since 1945 Hill has been the owner of a collection agency located in Newark, New Jersey. In 1962 he was the owner of three corporate entities, one of which was Professional, engaged in the collection agency business. He gave his son-in-law Spencer Blessing, Stephen Levitt and Rose Ilvento, all of whom had been associated with him for a long period of time, a 1/6 interest in each of the three corporations. In 1975, because of a serious illness and to avoid considerable inheritance and estate taxes, he transferred all of the stock in the three corporations to these same persons. While he divested himself of complete ownership of the corporations he nevertheless remained president of Professional, conducted its daily business and continued to receive the same compensation which he had been receiving for several years prior to the transfer of all of his interests.
*158 In 1976 Hill also transferred title to property located in Asbury Park, New Jersey to Levitt and Blessing. He had previously purchased this property in his name as well as in the names of Levitt and Blessing and transferred the property to them for a tax deduction. He received a promissory note for $12,000 signed by Blessing and Levitt which he endorsed on its face as "paid in full" and also purportedly received $3,000 in cash. Actually, he never received, nor did he intend to receive, the cash payment.
In 1979 the stock of the corporations was re-distributed so that Blessing and Levitt each held 50 1/2 shares; Miss Ilvento held 66 shares and another employee, Edith Hoffman was given 33 shares. The shares of Ilvento and Hoffman were held in trust under a written agreement. All of the corporate records, including the stock certificates, were kept at the offices of the corporate accountants, defendants Warner, Berman and Spitz, P.A.
In 1979, while examining the corporate books at the accountants' office, Hill discovered a letter from Levitt to the accountants directing them not to take any action to change the structure or operations of the corporation without Levitt's consent. The letter was rather threatening and there was enclosed an agreement dated April 21, 1975 which provided:
WE THE UNDERSIGNED, PARTNERS IN MANY DIFFERENT STOCKS AND CORPORATIONS, DO HEREBY AGREE THAT WE CANNOT CHANGE OR MODIFY, IN ANY WAY, ANY OF THE CONTRACTS, PENSIONS, TRUST AGREEMENTS AND OTHER DOCUMENTS THAT WE MAY HAVE SIGNED AS STOCKHOLDERS IN OUR NUMEROUS CORPORATIONS AND BUSINESS VENTURES WITHOUT BOTH AGREEING.
WE ALSO AGREE THAT WE CANNOT SELL, PLEDGE OR DO ANYTHING WITH OUR STOCK IN ANY CORPORATION WE BOTH HAVE INTEREST IN WITHOUT BOTH PARTIES AGREEING. NOR CAN EITHER PARTY TAKE IT UPON THEMSELVES TO MAKE ANY MAJOR STOCKHOLDER, DIRECTOR OR BUSINESS DECISION WITHOUT BOTH AGREEING.
THE PURPOSE OF THIS AGREEMENT IS TO AVOID CONFLICTS BETWEEN THE PARTIES ON THEIR MANY JOINT VENTURES.
___________________________________________________ SPENCER BLESSING ___________________________________________________ STEPHEN LEVITT
DATED: April 21, 1975
*159 The letter and agreement infuriated Hill who interpreted them to mean that Levitt did not trust him or the other two shareholders. Hill prepared an assignment dated October 12, 1979 for Blessing, Levitt, Ilvento and Hoffman to reassign all of the shares of Professional back to him. Blessing, Ilvento and Hoffman executed the assignment but Levitt refused.
Subsequently, Blessing sent an undated letter to Hill to cancel the assignment on the ground that he received no consideration for the assignment and that he did not have the right to assign the stock without the consent of Levitt. Blessing contended that he executed the assignment merely to keep peace in the family and that he was coerced into signing the assignment of his stock by Hill. Up to the time of the letter Hill made no attempt to transfer the stock to himself on the corporate books.
Hill instituted this action against the defendants Warner, Berman and Spitz, P.A. for possession of the books and records of the corporation; against Levitt and Blessing for monies due on the $12,000 promissory note; against Levitt for $7,648.79 for monies due from one of the corporate collection agencies, Middlesex-Union Collection Service, Inc.; against Blessing to require transfer of the 50 1/2 shares of stock in Professional from Blessing to him, and against Levitt and Blessing to impress a constructive trust or resulting trust on their stock.
The trial judge found that the October 12, 1979 transfer from Blessing to Hill of the 501/2 shares was a voluntary gift. He ruled that the Blessing and Levitt agreement did not prohibit the transfer and ordered that these shares be turned over to Hill. He also held that the 1975 transfer of the ownership in Professional by Hill to Blessing, Levitt and Ilvento did not create a trust but rather was an inter vivos gift to avoid inheritance taxes. He further held that Blessing and Levitt *160 were not liable on the $12,000 promissory note. The trial judge dismissed the claim concerning Middlesex-Union Collection Service, Inc., apparently on the ground that the corporation was not a party to the proceeding. Since it is not raised or briefed by Hill we will make no determination on that issue. See State v. Plainfield-Union Water Co., 75 N.J. Super. 571, 583 (App. Div. 1962), aff'd 40 N.J. 280 (1963).
On this appeal defendants contend that the trial judge erred in upholding the assignment from Blessing to Hill because: (1) Blessing made a promise for which there was no consideration to transfer stock, which promise was revoked before the transfer; (2) Blessing had no authority or right to transfer his stock without the consent of Levitt, and (3) the relief granted to plaintiff was against Blessing who was not a party to the litigation.
Plaintiff urges that (1) since the corporate books and records including the certificates of stock were not in the possession of the stockholders, there is no requirement for delivery of the certificate pursuant to the Uniform Commercial Code, N.J.S.A. 12A:8-309 to effect transfer; (2) the restriction in the agreement between Blessing and Levitt on the transfer of stock is invalid and unenforceable; (3) plaintiff's initial transfer of stock in the corporation created a resulting trust or alternatively a constructive trust should be imposed on the stock, and (4) the trial judge erred in determining (a) no cause of action against defendants Warner, Berman and Spitz, P.A. for possession of the books and records of the corporation, and (b) that plaintiff was not entitled to recover on the promissory note.
The initial contention of defendants is that Spencer Blessing merely promised, without consideration, to transfer his stock in Professional, which promise was revoked before a transfer was made to plaintiff. Subsumed in this contention, and perhaps even more fundamental, is the argument that there was no delivery of the stock certificate to qualify as a valid gift from Blessing to plaintiff. Defendants assert that the delivery of *161 the assignment dated October 12, 1979 from Blessing to plaintiff is insufficient to constitute an inter vivos gift because there was no delivery of the stock certificate as required by N.J.S.A. 12A:8-309.
The elements of an inter vivos gift are: (1) an unequivocal donative intent on the part of the donor; (2) an actual or symbolic delivery of the subject matter of the gift, and (3) an absolute irrevocable relinquishment by the donor of ownership and dominion over the subject matter of the gift, at least to the extent practicable or possible, considering the nature of the articles to be given. In re Dodge, 50 N.J. 192, 216 (1967). Actual delivery of the property is required except where "there can be no delivery" or where "the situation is incompatible with the performance of such ceremony." Foster v. Reiss, 18 N.J. 41, 50 (1955).
The rules for determining the validity and effect of gifts of stock are largely the same as those applicable to gifts of personal property generally, see Dierksen v. Albert, 106 N.J. Super. 220, 224-225 (App.Div. 1969), but the transfer of shares of stock is subject to statutory regulations. N.J.S.A. 14A:7-12(1) of the New Jersey Business Corporation Act, N.J.S.A. 14A:1-1 et seq. provides that the shares of a corporation shall be personal property and transferrable in accordance with Chapter 8 of the Uniform Commercial Code  Investment Securities, N.J.S.A. 12A:8-101 et seq. The definition section of the Uniform Commercial Code (UCC) defines the word "purchase" as including a gift, N.J.S.A. 12A:1-201(32). Formerly the Uniform Stock Transfer Act, N.J.S.A. 14:8-27 governed the transfer of stock but this statute has been superceded by the UCC, N.J.S.A. 12A:8-309 which provides:
An indorsement of a security whether special or in blank does not constitute a transfer until delivery of the security on which it appears or if the indorsement is on a separate document until delivery of both the document and the security.
Notwithstanding this, there may be a constructive delivery and acceptance unaccompanied by a manual delivery or *162 actual change of custody resulting from the acts and conduct from dealing with stock when there has been a change in the relation of the parties to it. So, the delivery of a stock certificate may be constructive, rather than actual, provided it is accompanied by words showing donative intent, but either constructive or actual delivery must completely divest the donor of his property and completely invest the donee with it. In other words, as between the parties, both acceptance and receipt, and therefore delivery, may be inferred from the attendant circumstances. 12 Fletcher Cyc. Corp., § 5484 at 293 (Perm.Ed. 1971).
In the absence of expressed provisions to the contrary, stock may be transferred by delivery of a separate written transfer, without delivery of any certificate where it is not in the possession of the transferee. Ibid. The UCC also recognizes the transfer of a security by a separate written assignment. N.J.S.A. 12A:8-308(1).
The New Jersey Study Comment 2. under N.J.S.A. 12A:8-308(1) notes that that subsection allows an endorsement to be on a separate instrument and that in this respect follows the provisions of the former Uniform Stock Transfer Act. The study comment refers to First Nat. Bank, Fort Lee v. Englewood, &c., Assn., 124 N.J. Eq. 360 (Ch. 1938). There, as collateral for a loan, a shareholder executed a separate assignment of his shares of stock, a power of attorney to transfer together with his book account number. It was argued that the mere assignment was invalid in that it did not conform to the provisions of the Uniform Stock Transfer Act which required that the certificate be delivered. Id. at 365. "Issued" was held to mean "delivery." Id. at 365-366. The certificate of stock was never removed from the stock book and was not "issued" within the meaning the court ascribed that term, i.e., "delivered." The court held that "Since the defendant association never issued a certificate [to the shareholder], he or his assignee could not deliver it to the defendant association." Id. at 365.
The court further commented:

*163 It is elementary that to make a gift effective, the donor must divest himself of all dominion over and control of the property given. Where the delivery of the certificate is practical, and a more ready and efficient way of changing the dominion and control over the stock, it is not unreasonable to require such delivery to complete a gift. But in the instant case, the delivery of the certificate by the complainant was not only impracticable but impossible. It was not in the possession of the donor; it was retained in the custody of one who had no title hereto. [Id. at 368; emphasis supplied].
The New Jersey Study Comment, Comment 2 under N.J.S.A. 12A:8-309 suggests that this statute does not effect the holding of First National Bank and that an attempt to transfer without delivery of the certificate will be effective in New Jersey, provided that the transferor has divested himself of all dominion. The comment further states that the transferee can then demand registration on the books of the issuer by producing the document containing the endorsement.
This is consistent with text authority. In the absence of an express provision to the contrary, stock may be transferred by delivery of a separate written transfer, without the delivery of any certificate, especially where no certificate has ever been issued, or where it is not in possession of the transferor. Section 8-308 of the UCC[1] recognizes the transfer of a security by a separate written assignment. 12 Fletcher, supra, § 5484.
Moreover, a transfer of stock to the donee on the corporate books is not essential to a valid gift as between the parties. Therefore as between them, the fact that it remains in the name of the donor on the books does not defeat the gift nor affect the title of the donee. Farrell v. Passaic Water Co., 82 N.J. Eq. 97, 102-104 (Ch. 1913); 12A Fletcher, supra, § 5684 at 706.
In the present case there was no transfer of the stock certificate to plaintiff on the books of the corporation. The certificate remained in the possession of the corporate accountants. It was not in the possession of the donor (Blessing) who executed a separate assignment to the donee (plaintiff) which *164 was accepted by him. We hold that, under the facts presented, there was an effective delivery and therefore a gift of the stock certificate from Blessing to plaintiff.
Next, defendants contend that
Hill gave no consideration for Blessing signing the agreement to transfer the stock back to Hill. There has never been a transfer of stock either physically on books of the corporation, therefore Blessing's revocation of his agreement to transfer stock should be effective.
We reject both of these contentions. A gift is a transfer without consideration, Herr v. Herr, 13 N.J. 79, 88 (1953), or as otherwise stated, no consideration is necessary for a gift. Farrell v. Passaic Water Co., supra, 82 N.J. Eq. at 99: Walker v. Dixon Crucible Co., 47 N.J. Eq. 342, 344-345 (Ch. 1890). Moreover, a gift which is absolute and made voluntarily with a full understanding of its effect cannot be revoked by the donor, either by his act alone or with the aid of a judicial tribunal. First Nat. Bank of Perth Amboy v. Keller, 122 N.J. Eq. 481 (E. & A. 1937). As stated in Walker v. Dixon Crucible Co., supra:
[It was] a voluntary gift, made perfect by delivery and acceptance, so that it became an executed contract and irrevocable, for it was founded upon the mutual consent of the parties in reference to a right or interest passing between them. [47 N.J. Eq. at 344].
We next consider defendant's contention that Blessing had no right to transfer his stock to plaintiff without the consent of Levitt. This is bottomed on the agreement of April 21, 1972, the pertinent part of which provides:
We also agree that we cannot sell, pledge or do anything with our stock in any corporation we both have interest in without both parties agreeing. Nor can either party take it upon themselves to make any major stockholder, director or business decision without both agreeing.
The purpose of this agreement is to avoid conflicts between the parties on their many joint ventures.
There are approximately eight different kinds of restrictions on transfers of corporate stock, O'Neal, Close Corporations, § 7.05 (1971), but they are generally classified into three main divisions: (1) the first-refusal option which gives the corporation or the shareholders or both the first opportunity to purchase when a stockholder desires to sell; (2) the consent-type *165 restraint which absolutely prohibits the sale of stock without the consent of the other shareholders or a percentage of the other shareholders or of the corporation, and (3) the buy-out agreement which imposes an obligation on the corporation or the shareholders to purchase the stock upon the occurrence of a contingency such as death, retirement, incapacity or any other variety of reasons or happening of specified events. 12 Fletcher, supra, § 5461.1 at 192.
Reasonable stock transfer restrictions such as first purchase rights held by the corporation or shareholders have been held valid in most jurisdictions. 12 Fletcher, supra, § 5461.3 at 197; O'Neal, supra, §§ 7.06, 7.08. However, even at the present time, absolute restrictions unlimited in time on the alienability of shares have been held to be invalid. O'Neal, supra, § 7.06 citing Prindiville v. Johnson & Higgins, 92 N.J. Eq. 515 (Ch. 1921), aff'd 93 N.J. Eq. 425 (E. & A. 1922). The New Jersey cases have upheld reasonable restraints and invalidated absolute consensual restrictions.
In Prindiville, supra, the right to control the transfer of shares dealing with preemptive rights or options or to acquire shares of retiring stockholder are deemed to be conditional contracts of sale and specifically enforceable. 92 N.J. Eq. at 522. On the other hand, the unqualified restraint on the transfer of shares of stock is in contravention of public policy and void. Id. at 521. A restriction upon transfer which essentially is a first right of refusal is the first step in an agreement of sale and is "not to compel the individual stockholder to keep his shares forever, unless by grace of the governing body of the company." Baumohl v. Goldstein, 95 N.J. Eq. 597, 599 (Ch. 1924). See also Coffin v. Coffin, 105 N.J. Eq. 8 (Ch. 1929).
The restraint on transfer without approval of another stockholder or the board of directors of the corporation has been invalidated for various reasons. For instance, in Tracey v. Franklin, 30 Del. Ch. 407 (Ch. 1948), aff'd 31 Del. Ch. 477, 67 A.2d 56, 60, 11 A.L.R.2d 990 (Sup.Ct. 1949), the Supreme Court *166 of Delaware invalidated a consent restraint on the basis that there was no benefit to the corporation.
The agreement is a private contract between two shareholders only. From all that is before us, we find no specification of any particular purpose, so far as the restraints in question are concerned, to benefit the corporation, or other stockholders of the same class, or to do otherwise than to solidify ownership in the parties themselves. The facts do not disclose legally sufficient purposes to justify the restraints on alienation. Therefore, we hold the restraints invalid. [Id. 67 A.2d at 60].
In Rafe v. Hindin, 29 A.D.2d 481, 288 N.Y.S.2d 662 (Sup.Ct. N.Y. 1968), aff'd o.b. 23 N.Y.2d 759, 296 N.Y.S.2d 955, 244 N.E.2d 469 (Ct. of App. 1968) the court struck down a consent constraint between two stockholders of a close corporation on the ground that it was unreasonable and arbitrary:
The legend on the stock certificate at bar contains no provision that the individual defendant's consent may not be unreasonably withheld. Since the individual defendant is thus given the arbitrary power to forbid a transfer of the shares of stock by the plaintiff, the restriction amounts to annihilation of property. The restriction is not only not reasonable, but it is against public policy and, therefore, illegal. It is an unwarrantable and unlawful restraint on the sale of personal property, the sale and interchange of which the law favors, and in restraint of trade. [288 N.Y.S.2d at 665].
In Fayard v. Fayard, 293 So.2d 421, 69 A.L.R.3d 1322 (Sup.Ct.Miss. 1974) the Supreme Court of Mississippi merely held that since the consent restraint was "ironclad", it was against public policy and therefore an unreasonable restraint on alienation. 293 So.2d at 424, 69 A.L.R.3d at 1325.
Here, the consent restraint agreement between Blessing and Levitt has no limitation as to time, does not provide that the consent to act by the other shareholder will not be unreasonably withheld and does not promote the interest of the corporation. For these reasons we hold that this absolute consent restraint on the transfer of the corporate stock is against public policy and therefore unlawful and invalid.
Moreover, the agreement provides that "the purpose of this agreement is to avoid conflicts between the parties on their joint ventures." The agreement between majority stockholders in this context is a freeze-out of minority shareholders. The *167 restrictions on transfer serve to protect, not the corporation, but the majority individual shareholders who should not be permitted to use their powers for their own personal advantage to the detriment of minority stockholders. See Berkowitz v. Power/Mate Corporation, 135 N.J. Super. 36, 45 (Ch.Div. 1975).
There is no merit to defendant's contention that Blessing was not a party to the litigation. The order of November 1, 1982 permitting the filing of an amended complaint was consented to by defendant's attorney and contained the following stipulation:
We hereby consent to the entry of the within order permitting the filing of an Amended Complaint, acknowledge receipt of a copy of the Amended Complaint and waive any further service of the same this day of October, 1982.
R. 4:4-6 provides that a general appearance shall have the same effect as if defendant had been properly served. As stated by the trial judge Blessing was present in the proceedings, was seated at counsel table during the trial and was represented by counsel. As stated in Fiorino v. Fiorino, 35 N.J. Super. 463, 469 (Juv.Dom.Rel.Ct. 1955):
Even if he had not been served, by appearing generally at the hearings on February 4 and February 18, by failing either hearing to object to jurisdiction over his person, and by fully participating in the hearing on its merits, defendant had waived any objection or right to object, to jurisdiction over his person and voluntarily submitted himself to the jurisdiction of this court. R.R. 4:4-6; Field v. Field, 31 N.J. Super. 139, 147, 148 (App.Div. 1954); Trautman v. Higbie, 10 N.J. 239, 243 (1952); Turtur v. Schwarz, 15 N.J. Super. 241, 244 (App.Div. 1951). [at 469].
Nor is there any merit to the contention of plaintiff that his initial transfer of stock in the corporation created a resulting or a constructive trust. A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted or the beneficial interest is otherwise effectively disposed of. 2 Restatement, Trusts 2d, § 404 (1959). There is no such indication of an inference of intent that Hill did not *168 intend Levitt and Blessing to have the beneficial interest in the shares of stock.
A constructive trust is a relationship with respect to property subjecting the person whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property. 1 Restatement, Trusts 2d, § 1, comment e. (1959); D'Ippolito v. Castoro, 51 N.J. 584, 588 (1968); Stretch v. Watson, 5 N.J. 268, 278-279 (1950). The factual findings of the trial judge that the transfer of stock by Hill was a gift and did not create a trust is supported by substantial credible evidence in the record, Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974) which we will not disturb on appeal.
The shares of stock in the corporation were transferred absolutely by Hill on two separate occasions with no reservation; the subsequent acts of the donees are not such as to constitute unjust enrichment. Hill made absolute gifts and as stated in 1 Restatement, supra, § 37, comment a.:
Where the owner of property transfers the legal title together with the beneficial interest to another, he cannot ordinarily reserve to himself power to retake the property or to control the transferee in its use. Thus, a person who makes an outright gift of shares of stock cannot reserve a power to revoke the gift, or a power to control the donee in selling the stock.
Lastly, we find no error by the trial judge in refusing the transfer of the books and records of the corporation. Initially, at least insofar as the record before us appears, the stocks assigned to Hill by Blessing, Ilvento and Hoffman still had not been transferred to him on the books of the corporation. Moreover, the issue was moot because the books were transferred to plaintiff's attorney by virtue of a consent order.
As to the judgment of no cause of action on the $12,000 promissory note, we again find that the trial judge did not err inasmuch as there was no intent that the note was to be paid as evidenced by the fact that Hill had endorsed "paid in full" *169 across the face of the promissory note and intended to take a tax loss on the property. Again the factual findings of the trial judge are amply supported by substantial credible evidence. Rova Farms Resort v. Investors Ins. Co., supra.
Affirmed.
NOTES
[1] N.J.S.A. 12A:8-308(1).