No. 86-405

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

_____

ROBERT G. GRAY, a/k/a PAT GRAY,

        Petitioner and Appellant,

-vs-

HARRIS LAND AND CATTLE CO. and its
BOARD OF DIRECTORS and MEMBERS thereof,
MARJORIE GRAY, DORAN LYNCH and VALERIE
SOLANDER,

        Respondents and Respondents.


_____

APPEAL FROM:  District Court of the Eighth Judicial District,
             In and for the County of Cascade,
             The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Emmons & Coder; H. William Coder, Great Falls,
        Montana

    For Respondent:

        Scully, Lilly & Andriolo; John P. Scully, Bozeman,
        Montana

_____

Submitted on Briefs: Dec. 31, 1986

Decided:  May 15, 1987

MAY 1 5 1987

Filed:

_____
                  Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal arises from a dismissal of a petition for writ of mandamus entered by the District Court of the Eighth Judicial District in and for Cascade County. Appellant, a shareholder in a closely held corporation, sought to sell his shares to a party outside the corporation, but was prevented by the remaining shareholders. Appellant filed a petition for writ of mandamus seeking an order to compel this sale, but the District Court dismissed the petition. We affirm.

The parties presented this case upon stipulation of the facts. Harris Land and Cattle Company is a small, closely held farming and ranching corporation consisting of five family shareholders. In 1978, the corporation executed a Buy-Sell Agreement designed in part to allow the shareholders an opportunity to keep the corporation within the closely held group.

Paragraph (1) of this Agreement requires that so long as all the shareholders are alive, any shareholder who wishes to dispose of his stock must first obtain the written consent of the remaining shareholders and of the corporation. This paragraph provides in full:

> 1. So long as all of the STOCKHOLDERS are alive, they each shall not encumber or dispose of the stock of the CORPORATION which he or she now owns or may hereafter acquire without the written consent of the remaining STOCKHOLDERS and that of the CORPORATION.

Paragraph (5) of the Agreement provides that any shareholder who wishes to dispose of his stock must first offer to the corporation the stock for sale. If the corporation declines to purchase the stock, the selling shareholder must then

offer the stock to the other shareholders. This Agreement was signed by each of the shareholders.

In August 1985, one of the shareholders, Robert Gray, notified the corporation, through its other shareholders, of his desire to sell his stock in the corporation. In accordance with a separate provision in the Buy-Sell Agreement, Gray requested that the corporation appoint an independent appraiser to evaluate the underlying assets of the corporation for the purpose of valuing the stock. The remaining shareholders, however, in October 1985, invoked the provisions of paragraph (1) of the Buy-Sell Agreement and refused their consent to Gray's sale. They unanimously voted not to appoint an independent appraiser.

Gray responded by filing with the District Court a petition for writ of mandamus, seeking an order to compel the corporation to appoint an appraiser as a prerequisite to the sale of this stock. The District Court, however, dismissed Gray's petition. Gray now appeals.

The central issue on appeal concerns the validity of the share transfer restrictions contained within the Buy-Sell Agreement. The common law has never formulated a precise definition of a close corporation, but the term is commonly used to distinguish a family corporation or a corporation with only a few shareholders from the public-issue or publicly held corporation. See generally, 1 O'Neal, Close Corporations, § 1.02 (1971).

This Court has previously described a close corporation as:

> one in which management and ownership are "substantially identical to the extent that it is unrealistic to believe that the judgment of the directors will be independent of that of the stockholders."

Thisted v. Tower Management Corporation (1966), 147 Mont. 1, 14, 409 P.2d 813, 820 (quoting The Close Corporation, 52 Nw.U.L.Rev. 345 (1957)).

Due to their very nature, close corporations often utilize share transfer restrictions. Because ownership and management are so intimately related in such entities, shareholders in a closely held enterprise usually desire to retain the power to choose future associates. 2 O'Neal, supra, § 7.02. This practice has long received judicial recognition. See e.g., Barrett v. King (Mass. 1902), 63 N.E. 934, 935. This interest, however, must be balanced against the traditional right of free alienability of one's personal property.

Consideration of these competing interests has led courts to sustain share transfer restrictions which are deemed reasonable in light of all the relevant circumstances, but to invalidate absolute restrictions forbidding the alienation of corporate stock. See e.g., Hill v. Warner, Berman & Spitz, P.A. (N.J. 1984), 484 A.2d 344, 350-51; Renberg v. Zarrow (Okla. 1983), 667 P.2d 465, 469; Fayard v. Fayard (Miss. 1974), 293 So.2d 421, 423; 2 O'Neal, supra, § 7.06.

Against this backdrop, appellant now challenges the restrictions imposed by the Buy-Sell Agreement. He concedes the reasonableness of the provisions contained within paragraph (5) of the Agreement, restricting the sale or transfer of corporate stock without first giving the corporation and then the remaining shareholders an opportunity to purchase the stock. Appellant, however, contests the consent restriction found in paragraph (1), requiring prior approval from the corporation and the other shareholders before a shareholder may attempt to dispose of his or her stock. Such a restriction, appellant contends,

4

constitutes in effect an absolute restriction upon his right of alienability.

In upholding the consent restriction, the District Court stated in its findings of fact, from which no appeal has been taken, the following:

> The corporation is a small, closely held corporation consisting of family members. To further the purpose of keeping the shares of stock in a closely held group, the parties agreed as follows in paragraph 1 of the Buy-Sell Agreement:
>
> "1. So long as all of the STOCKHOLDERS are alive, they each shall not encumber or dispose of the stock of the CORPORATION which he or she now owns or may hereafter acquire without the written consent of the remaining STOCKHOLDERS and that of the CORPORATION."

The court made further reference to the provisions of the Agreement which specified the manner in which stock would be offered and purchased. The District Court further found:

> 2. The operations of the corporation consist predominantly of farming and ranching. The shareholders and board of directors are the major contributors to the operations and the operations are consistent with the corporation's Articles of Incorporation and By-Laws. The intent of the parties at the time of entering into the Buy-Sell Agreement was to prohibit the entrance of third parties into the closely held corporation frame work.

Based upon its findings, the court concluded that § 35-1-617(3), MCA, provided for the restrictions on transfer and that the restrictions in paragraph 1 of the Agreement met the statutory requirements. Section 35-1-617, MCA, in pertinent part provides:

> (1) A written restriction on the transfer or registration of transfer of

5

shares of a corporation, if permitted by this section and noted conspicuously on the certificate representing such shares, may be enforced against the holder of the restricted shares or any successor or transferee of the holder . . .

. . .

(3) A restriction on the transfer of shares of a corporation is permitted by this section if it:

(a) obligates the holder of the restricted shares to offer to the corporation, to any other holders of shares of the corporation, to any other person, or to any combination of the foregoing a prior opportunity, to be exercised within a reasonable time, to acquire the restricted shares;

(b) obligates the corporation, any holder of shares of the corporation, any other person, or any combination of the foregoing to purchase the shares which are the subject of an agreement respecting the purchase and sale of the restricted shares;

(c) requires the corporation or the holder of any class of shares of the corporation to consent to any proposed transfer of the restricted shares or to approve the proposed transferee of the restricted shares[.]

Appellant argues that the effect of the District Court opinion is to permanently prohibit the sale of stock. That is not consistent with the wording of the Agreement itself. In paragraph (1) the Agreement states that so long as all of the stockholders are alive, they each shall not encumber or dispose of the stock of the corporation without the written consent of the remaining stockholders and that of the corporation. The term of this provision is so long as the initial five stockholders are alive. That of course does not

constitute a perpetual limit on the right of sale and on its face is not unreasonable.

The argument is made that because § 35-1-617, MCA, was not enacted until 1981, which was three years after the execution of the Buy-Sell Agreement, the statute cannot be retroactively applied. The theory of retroactivity is not appropriate in the present instance as we are not attempting to apply a statute to a contractual action which took place prior to the enactment of the statute and which is somehow adversely affected by the statute itself. In the present case, all five of the stockholders freely executed the Buy-Sell Agreement. By that action they established restrictions on their individual rights of transfer of the shares. Subsequently, the legislature enacted § 35-1-617, MCA, which specifically provided for the enforcement of various types of restrictions on the transfer of shares of corporations. We conclude that the statutory provisions merely demonstrate legislative approval of the action previously taken by the stockholders. As a result, we conclude that the statutory provisions of § 35-1-617, MCA, can properly be applied to the Buy-Sell Agreement without a question of improper retroactivity.

We agree with the conclusion of the District Court that the Buy-Sell Agreement provision was proper under the provisions of § 35-1-617(3)(c), MCA. The appellant has failed to submit any theory which demonstrates a reason for finding the Buy-Sell Agreement improper or unconstitutional. We note that other jurisdictions have tested the validity of share transfer restrictions by determining whether or not the restrictions were reasonable in the light of all relevant circumstances. 2 O'Neal, supra, § 7.06. At 12 W. Fletcher, Cyclopedia of the Law of Private Corporations, § 5461.3, (rev. perm. ed., 1985), the author points out that the

underlying test for determining reasonableness is whether the restraint is sufficiently needed by the particular enterprise to justify overriding the general policy against restraints on alienation. We conclude that the findings of fact clearly demonstrate facts warranting the stock restriction and further conclude that the stock restriction is a reasonable method of meeting the requirements of the statute. We hold that the consent restraint contained in the Buy-Sell Agreement was valid and enforceable.

In sum, we find that the share transfer restrictions contained within the Buy-Sell Agreement are valid and enforceable. Accordingly, the corporation had no obligation to appoint an independent appraiser and appellant's petition should have been dismissed. The result reached below is therefore affirmed.

Justice

We concur:

Chief Justice

Justices

8