182 N.J. Super. 77 (1981)
440 A.2d 51
TOWPATH UNITY TENANTS ASSOCIATION, AN UNINCORPORATED ASSOCIATION, AND MARLEAH DIXON, INDIVIDUALLY AND ON BEHALF OF A CLASS, PLAINTIFFS-APPELLANTS,
v.
JOHN BARBA, SR., T/A TOWPATH ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, JOHN BARBA, SR., INDIVIDUALLY AND JOHN BARBA, III, DEFENDANTS-RESPONDENTS, AND PATRICIA BATES, WARREN BERRY, GEORGE MEDILL AND KAY MEDILL, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 7, 1981.
Decided December 18, 1981.
*78 Before Judges ALLCORN, FRANCIS and MORTON I. GREENBERG.
Ronald Schwartz, attorney for appellants.
J. Edward Palmer, attorney for respondents.
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
An understanding of this matter before us on an interlocutory appeal by leave granted requires that its procedural history be set forth at some length.
This action was commenced by the filing of a complaint on behalf of "Towpath Unity Tenants Association, an unincorporated association, and Marleah Dixon, individually and on behalf of a class." The complaint alleged that plaintiff association was an unincorporated association comprised of more than seven members acting to protect the mutual interests of the tenants in the Towpath apartments in Independence Township and that plaintiff Dixon was president of the association. Defendants were asserted to be the owners of the apartments and various of its employees.[1] Plaintiffs asserted that Dixon and her husband had *79 entered into a written one-year lease in October 1977 for an apartment in the complex and that prior to plaintiff Dixon entering into the lease defendants made representations to her and to her husband that it was defendants' intention to build certain facilities for the tenants by Spring 1978. The facilities were stated to be tennis courts, a swimming pool, a nine-hole golf course, a recreation area for children and a picnic area. In addition, the complaint alleged that defendants had represented that each apartment would have two air conditioners, cable television and storage space in the basement. Plaintiffs further alleged "upon information and belief" that the recited representations "were made to many other tenants prior to their execution of leases for apartments" and that defendants intended that plaintiff Dixon and the other tenants rely on these representations which defendants knew to be false. Plaintiffs asserted that Dixon and, "upon information and belief," the other tenants relied on the representations and entered into leases, and that except for the representations plaintiff Dixon and, "upon information and belief," the other tenants would not have moved into the premises. Plaintiffs sought compensatory and punitive damages.
The record on appeal does not include the answers filed on behalf of defendants. The parties, however, are in agreement that all defendants filed answers denying that the representations were made. Additionally, the individual defendants asserted that if, in fact, the representations were made, they were given at the direction of the landlord. The landlord claimed that any representations made were unauthorized. We are also told that a third-party complaint was filed against one Geraldine Frye by certain of the defendants. We do not have a copy of that complaint.
*80 Subsequently plaintiffs moved for an order certifying the case as a class action. This motion was granted and the motion judge on July 9, 1979 signed an order certifying the matter as a class action. R. 4:32-2(a). Unfortunately, we do not know what reasoning led the court to grant the motion nor do we know the precise section of R. 4:32-1(b) which the judge perceived governed the action. We think it likely that he relied on R. 4:32-1(b)(3) which permits a class action when questions of law or fact common to the class predominate over questions affecting individual members of the class. We do know that the judge ordered the attorney for defendant landlord to supply plaintiffs' attorney with a list showing the name and address of every tenant who took possession of an apartment at Towpath apartments during 1977 and 1978. The order further provided that after receiving the list plaintiffs' attorney was to give the notice to the class required by R. 4:32-2(b). The order specified that the date for exclusion from the class was September 1, 1979.
The parties are in agreement that the class included 160 families. The precise number of lessees, however, is not clear. In December 1979 the attorney for the landlord served 160 sets of interrogatories on plaintiffs' attorney. The interrogatories are included as a portion of the record on the appeal and are set forth in full in the appendix to this opinion. There are 20 interrogatories in each set. Plainly, they could not be deemed oppressive or unfair in themselves. They ask questions directly related to the representations made to the party, his execution of the lease and whether he inspected the premises before he took possession. Plaintiffs assert, and defendants agree, that plaintiffs sought a protective order granting them some relief from having to obtain 160 answers. Unfortunately, the record does not include a transcript of the argument on the motion. Nor have the parties supplied a signed copy of the order entered following argument. The record does include an unsigned order which apparently reflects the decision on the motion. The order indicates that plaintiffs' motion for a protective order was *81 denied and that plaintiffs' attorney was to obtain answers to the interrogatories from each member of the class represented by the attorney.
Plaintiffs' attorney had little success in obtaining answers to the interrogatories. In fact, only 16 sets of answers were completed. Consequently, the landlord's attorney moved to dismiss the complaint as to the nonanswering members of the class. The motion was argued on July 21, 1980. After hearing argument the motion judge reserved decision. Insofar as we can ascertain, the judge never has given an opinion with respect to the reserved decision. The record, however, includes an order signed November 6, 1980 granting the motion to dismiss the complaint as to all class members who failed to answer interrogatories. Since the order did not otherwise specify, the dismissal was without prejudice. R. 4:37-2(a). In addition, the judge decertified the matter as a class action and provided that the case proceed as in other civil actions alleging fraud. Presumably, notwithstanding the decertification, it was the intent of the motion judge that the class members who answered interrogatories be plaintiffs in the continuing action even though they are not named in the caption of the complaint. By our order of April 28, 1981 we granted, nunc pro tunc, plaintiffs' motion for leave to appeal from the order of November 6, 1980.
Initially we point out what is not before us on this appeal. We do not deal with the question of whether the action should have ever been certified as a class action. See Riley v. New Rapids Carpet Center, 61 N.J. 218, 227 (1972). The matter is not here after final judgment. An appeal at that time would bring up all interlocutory matters. In re Carton, 48 N.J. 9, 15 (1966). Rather, we granted leave to appeal to review the order dismissing the action because of the failure of the members of the class to answer interrogatories. Thus, we limit our opinion to deciding whether in view of the class members' deficiencies in supplying discovery the order of November 6, 1980 was proper.
*82 The thrust of plaintiffs' argument is that R. 4:23-5(a) permitting dismissal for failure to answer interrogatories deals only with parties; that the members of the class are not parties and that the rules contemplate that they play a passive role, not engaging in discovery.
Nowhere do our rules expressly deal with the question of whether or not members of a class may be required to answer interrogatories. See R. 4:17; R. 4:23; R. 4:32. But there is impressive authority elsewhere that in appropriate circumstances members of a class not actively engaged in the litigation may be required to submit to discovery and that if they do not, their claims may be dismissed. Clark v. Universal Builders, Inc., 501 F.2d 324, 340-341 (7 Cir.1974), cert. den. 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974); Brennan v. Midwestern United Life Ins. Co., 450 F.2d 999, 1004-1006 (7 Cir.1971), cert. den. 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972); Danzig v. Superior Court, 87 Cal. App.3d 604, 151 Cal. Rptr. 185 (D.Ct.App. 1978).
In Brennan the United States Court of Appeals for the Seventh Circuit discussed the issue in considerable depth. That case was a class action arising from a fraudulent sale of securities. Defendant obtained an order requiring all members of the class to answer interrogatories. Some members of the class did not comply, and as a consequence their claims were dismissed with prejudice. Subsequently, the underlying action was tried and the court ruled in favor of plaintiff and the remaining members of her class. The members of the class whose claims had been dismissed then moved to set aside the order of dismissal. The District Court denied their motion and the District Court of Appeals affirmed. The District Court of Appeals held that "absent class members may, under certain circumstances, be required to submit to discovery under Rules 33 and 34 and that the sanctions of Rule 37 are available to compel compliance with such discovery orders." 450 F.2d at 1004. The court further stated:
If discovery from the absent member is necessary or helpful to the proper presentation and correct adjudication of the principal suit, we see no reason why *83 it should not be allowed so long as adequate precautionary measures are taken to insure that the absent member is not misled or confused. While absent class members should not be required to submit to discovery as a matter of course, if the trial judge determines that justice to all parties requires that absent parties furnish certain information, we believe that he has the power to authorize the use of the Rules 33 and 34 discovery procedures. [at 1005]
In Clark v. Universal Builders, Inc., supra, the United States Court of Appeals for the Seventh Circuit adhered to its approach in Brennan. There the court (at 340) emphasized that "The party seeking discovery has the burden of demonstrating its merits." In Danzig v. Superior Court, supra, the court indicated that in a proper case interrogatories could be served on unnamed members of a class. The court summarized its holding as follows:
We hold that in order for a defendant to have discovery of unnamed members of a plaintiff class by means of interrogatories, the defendant must carry the burden of showing that (a) such interrogatories request only such information as is necessary to trial of the class issues in the case, (b) such information is not readily obtainable from other sources, and (c) the interrogatories are neither unduly burdensome nor promulgated for an improper purpose.
We are satisfied from these authorities that we should consider the propriety of the order, not in a vacuum but rather in the context of defendants' need for the answers to interrogatories. The complaint, of course, sets forth a claim for legal fraud. To prevail in such an action a plaintiff must establish that a defendant misrepresented a presently existing or past fact; that the misrepresentation was made with knowledge of its falsity; that the defendant intended the plaintiff to rely on the misrepresentation and that plaintiff did rely and was damaged. Foont-Freedenfeld Corp. v. Electro Protective Corp., 126 N.J. Super. 254, 257 (App.Div. 1973), aff'd o.b. 64 N.J. 197 (1974). Here, of course, plaintiffs did not suggest that defendants represented that the improvements had been installed. Thus, plaintiffs will have the burden at trial to show not only that the improvements had been promised and not installed but that a defendant when he made his representation knew or at least had reason to know that they would not be installed. See Landriani v. Lake Mohawk Country Club, 26 N.J. Super. 154, 160 (App.Div. 1953).
*84 In the context of this case it is clear that the interrogatories were proper. It is manifest that different things may have been said to different tenants. Further some may not have been induced by the representations, even if made and false, to sign a lease. For example a childless couple may not have been interested in a children's recreational area. Thus, defendants' question asking why the class member rented was particularly germane. The fact is that the very nature of the litigation is such that it is plausible that none, some or all of the tenants may have a valid claim for relief. It is obvious as well that unless the case of an individual class member is particularly considered, the validity of his claim can hardly be established. The interrogatories were perfectly proper and the sanction of the court, dismissal without prejudice, was entirely appropriate.[2] Indeed, it is not without significance that only 10% of the class members have cooperated in this case. Plaintiffs' attorney's affidavit in opposition to the motion to dismiss recites that 57 sets of interrogatories were returned by the post office undelivered. Thus, 103 sets must have been received. Yet only 16 were answered. Apparently the other tenants do not share Dixon's enthusiasm for this action. We cannot help but wonder whether they think they were defrauded.
The result we reach is consistent with R. 4:32-3. That rule is clearly intended to give the trial judge broad powers in managing class actions. Indeed we are satisfied that R. 4:32-3(a), in authorizing the court to make an appropriate order "determining the course of proceedings," in itself authorized the court to allow interrogatories in the reasonable exercise of its discretion.
One final point remains. The order of November 6, 1980 decertified the matter as a class action. In view of the limited number of remaining members of the class this was appropriate. R. 4:32-1(a). But if the case is to continue as an ordinary action *85 the remaining class members should be specifically named. In the context of this case it would not be inappropriate for plaintiffs' attorney to ascertain individually from the remaining members of the class if they desire to continue in the case as named parties. If so, the complaint and other pleadings should be appropriately amended to name them as parties. Otherwise the case should be dismissed as to them as well.
The order of November 6, 1980 is affirmed. The matter is remanded to the Superior Court, Law Division, Warren County, for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

APPENDIX
1) State your name, address, telephone number and social security number.
2) State the Date of your first visit to the Towpath Apartments.
3) With reference to Question No. Two, state the name of the person with whom you spoke who was acting as an agent for Towpath Associates.
4) In reference to Question No. Two, specifically state the detailed content of all conversations which took place between yourself and the agent for Towpath Associates.
5) State the date and place of the signing of your lease with Towpath Associates, Inc.
6) State the name of the person who acted as the agent for Towpath Associates at the signing of your lease.
7) State the date when you first took possession of your apartment at Towpath Apartments.
8) State specifically all promises made to you concerning recreational facilities to be constructed by Towpath prior to your signing of a lease.
9) With reference to Question No. Eight, state the following:
a) The names of the persons present at the time that these alleged promises were made.

*86 b) The date and time.
c) The place.
d) The date by which the recreational facilities would be completed.
e) The person who made the statement.
10) State whether or not you read your lease before you signed it.
11) State whether or not you read Clause No. 19 of said lease.
12) State whether or not you have ever renewed your lease with Towpath Associates subsequent to signing your original lease.
13) If you were promised recreational facilities, state whether they would have been included in the rent.
14) With reference to Question No. Six, specifically state the detailed contents of all conversations which took place between yourself and the agent for Towpath Associates.
15) State if you ever made a physical inspection of the grounds at Towpath Apartments.
16) If so, state the following:
a) With whom.
b) The date.
c) Content of any conversation that you had at the time with any agent of Towpath Associates.
17) Specifically state the reasons that you rented at Towpath Apartments.
18) Specifically state the reasons that you renewed your lease at Towpath Apartments.
19) State the names and addresses of all persons who were witnesses to or have knowledge or information of any relevant facts relating to this action or who possess proof of the incidents or acts involved, their relationship to you and indicate which were eyewitnesses.
20) State the names and addresses of any and all proposed expert witnesses, and as to each, their field of expertise and annex thereto copies of all reports rendered by said experts. If such report was oral, give detailed recitation of same.
NOTES
[1] We have some difficulty with the designation of a defendant as "John Barba, Sr., t/a Towpath Associates, Inc., a Corporation of the State of New Jersey." We think it likely that the property is owned by a corporation controlled by the Barba defendants.
[2] We add the following caveat. It is our intention to decide this case. We do not suggest that interrogatories on members of a class will always be appropriate.