OPINION OF THE COURT
Jane S. Solomon, J.
Plaintiff moves for an order pursuant to CPLR 3212 directing entry of summary judgment in the amount of $5,430.90, plus interest, on the ground that the plaintiff cooperative corporation validly imposed, and thus defendants Barbara Pierce and Charles Pierce must pay, a transfer fee, commonly known as a "flip tax”, incurred when they sold their shares in the cooperative corporation to a third party. Defendants cross-move for summary judgment, contending that this fee was improperly imposed and is invalid. As set forth below, plaintiff’s motion is granted and the defendants’ motion is denied.
Plaintiff commenced this action on January 19, 1989. Defendants’ answer alleged that the fee is invalid because (1) the flip tax is not authorized in the proprietary lease; (2) pursuant to the amended cooperative offering plan which provides for the flip tax, the sponsor is exempt from paying any fee upon a transfer or sale of "unsold shares”; and (3) no "proper corporate action” has been taken to authorize the flip tax.
On December 4, 1981 through the purchase of 58 shares, the Pierces became tenants/shareholders of the cooperative. On August 31, 1988, they executed an agreement with a third party for the sale of these shares and assignment of the proprietary lease of the apartment to which these shares are appurtenant. On October 11, 1988, Wallack Management Co., Inc., plaintiff’s managing agent, sent a transfer fee calculation form to defendants. On November 17, 1988 at a closing of the Pierces’ sale, the agent’s representative requested that the Pierces sign a written waiver on the validity of the transfer fee plaintiff intended to impose, adding that unless the fee was paid, the closing would not go through. Defendant Barbosa, counsel to the Pierces, despite his voiced objection, had his clients sign the waiver and paid the requested sum by his *266 escrow check, also under protest. Almost immediately following the closing, however, he stopped payment on the check. The parties do not dispute these facts, or that the transfer fee was adopted in the second amendment to the offering plan, dated July 31, 1980, and that, pursuant to the flip tax provision in that amendment, the cooperative corporation’s board of directors authorized continuation of the fee by resolution dated October 3,1988.
The inquiry here is whether the flip tax as imposed by the amended offering plan is valid. Plaintiff’s position is that imposition of the tax complies with section 501 (c) of the Business Corporation Law, which was amended on July 24, 1986, effective immediately (L 1986, ch 598) and which was given retroactive effect.
In opposition, defendants argue that the amendment is to be narrowly construed and that, as a threshold matter, since the authorization of the flip tax was not effected in the proprietary lease or an occupancy agreement, it is invalid. This argument is based on defendant’s reading of the statute governing retroactivity of the amendment to section 501 (c).
Prior to the 1986 amendment of section 501 vc), the Court of Appeals had held in Fe Bland v Two Trees Mgt. Co. (66 NY2d 556 [1985]) that governing documents of a cooperative corporation might provide for a transfer fee, so long as there was compliance with section 501 (c). That section then required that each share of a class of stock was to be equal to every other share of the same class. As a result, in Fe Bland (supra, at 569) the court held that a flip tax proportional to the profit earned by a selling shareholder but not proportional to the number of shares held by that shareholder in relation to the total number of outstanding shares violated the statutory requirement. In response to this decision, section 501 (c) was amended.
The amendment provided that "shares of the same class shall not be considered unequal because of variations in fees or charges payable to the corporation upon sale or transfer of shares and appurtenant proprietary leases that are provided for in proprietary leases, occupancy agreements or offering plans or properly approved amendments to the foregoing instruments”. (L 1986, ch 598, § 1.) Moreover, the amendment was to "take effect immediately” and "be deemed to apply to shareholders of cooperative apartment corporations from and after the date of execution of the proprietary leases and *267 occupancy agreements executed before the effective date of this act.” (L 1986, ch 598, § 2.)
Defendants argue that because the retroactivity provision of the amendment does not refer to execution dates of offering plans, and the flip tax imposed by plaintiff is provided for only in the amended offering plan, the amendment covers plaintiff’s imposition of a flip tax only prospectively from the effective date of the statutory amendment. This argument reflects a misreading of the retroactivity provision. That provision simply provides that the date when a shareholder becomes bound by a flip tax provision is the date that the shareholder executes its proprietary lease or occupancy agreement, if the cooperative then has such a provision, i.e., the shareholder is bound when its ownership and occupancy interests in the corporation begin. That this result is the only possible reading of the retroactivity provision is underscored by the fact that the only document normally executed by a cooperative shareholder with the cooperative corporation is the proprietary lease, or other "occupancy agreement.” Once this misreading is eliminated, it is clear that, if otherwise lawful, plaintiff’s flip tax provision binds the Pierces. (See, Vaughn v Manor Towers Owners Corp., 135 AD2d 380, 382 [1st Dept 1987].)
Defendants’ remaining arguments challenging the fee are readily disposed of.
The second amendment to the offering plan provides for the flip tax by setting forth an amendment to sections of article VI of the bylaws of the cooperative. As contemplated by section 501 (c) in its reference to amendments to offering plans, as the then shareholder, the sponsor clearly had authority to adopt this provision. (See, Quirin v 123 Apts. Corp., 128 AD2d 360, 364 [1st Dept 1987], lv dismissed 70 NY2d 796 [1987].) When the Pierces purchased their stock certificate, they became shareholders bound by the corporate bylaws, as well as by their proprietary lease. The law is clear that all operative corporate and cooperative documents — offering plan, certificate of incorporation, lease and bylaws, are inseparably joined in determining the relationship of shareholders/tenants to a cooperative. (Fe Bland v Two Trees Mgt. Co., supra, at 563.)
The terms of the governing bylaws set forth in the second amended offering plan describe the manner of calculating the flip tax and provide that, for the first 36 months after *268 the closing of the cooperative conversion, the calculations may not be changed by the board of directors but that, thereafter, the board may "modify or extend” the flip tax. The board continued the tax without modification through the time of the Pierces’ sale. The action of plaintiffs board of directors in extending the flip tax was within its authority.
The amended bylaw also provides that the flip tax provision is not to apply to the sponsor or holders of unsold shares. The exemption for the sponsor, contrary to defendants’ assertions, is patently authorized by section 501 (c), both by its terms in permitting variations among shareholders in calculating the fee, and by virtue of the explicit gloss on those terms provided in the legislative history. (Mogulescu v 255 W. 98th St. Owners Corp., 135 AD2d 32, 38-39 [1st Dept 1988].)
In short, all of defendants’ arguments are without merit. In particular, their stress on the notion that plaintiffs flip tax is invalid because the provision is contained in its bylaws, while section 501 (c) does not expressly include that document as one in which such a fee may be initiated, reflects a misconstruction of the law. In referring to an offering plan or an amendment thereof, the amended statute logically contemplates that if a flip tax provision is not in the form proprietary lease, it would be included in the portion of an offering plan that sets forth the corporate bylaws. Moreover, nowhere in the Fe Bland decision does the court hold that a properly adopted corporate resolution amending bylaws may not impose a flip tax. (See, Fe Bland v Two Trees Mgt. Co., supra, at 566-567.)
Accordingly, plaintiff is entitled to judgment against defendants in the sum of $5,430.90, together with interest from November 17, 1988.