696 A.2d 31

SIDNEY AND EVELYN SULCOV, LILA KAHAN, IRVING AND LULU KAUFMAN, STEPHAN AND MAXINE SANDS, AND MORTON AND SHIRLEY MOCK, INDIVIDUALLY AND ON BEHALF OF FORMER SUBSCRIBERS/PURCHASERS OF THE COMMON STOCK OF 2100 LINWOOD OWNERS, INC., SIMILARLY SITUATED, PLAINTIFFS–RESPONDENTS, v. 2100 LINWOOD OWNERS, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND BOARD OF DIRECTORS, JOHN DOE AND JANE DOE, REPRESENTING THE BOARD OF DIRECTORS, DEFENDANTS–APPELLANTS.

JOEL AND FRANCINE ZELNIK, ELI ROSEN, HORTENSE R. LAWN, HARVEY AND DOROTHY STAUB, AND NEAL HARTMANN, INDIVIDUALLY AND ON BEHALF OF FORMER SUBSCRIBERS/PURCHASERS OF THE COMMON STOCK OF MEDITERRANEAN TOWERS WEST OWNERS, INC., PLAINTIFFS–RESPONDENTS, v. MEDITERRANEAN TOWERS WEST OWNERS, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND BOARD OF DIRECTORS, AND JOHN DOE AND JANE DOE, REPRESENTING THE BOARD OF DIRECTORS, DEFENDANTS–APPELLANTS.

MARYANN MCINTYRE, HELEN AND HAL MILES, SUSAN J. HABER, JOHN RUSH, AND JAMES VILLAMANA, INDIVIDUALLY AND ON BEHALF OF FORMER SUBSCRIBERS/PURCHASERS OF THE COMMON STOCK OF 1170 APARTMENT CORP., SIMILARLY SITUATED, PLAINTIFFS–RESPONDENTS, v. 1170 APARTMENT CORP., A CORPORATION OF THE STATE OF NEW JERSEY AND BOARD OF DIRECTORS, JOHN DOE, AND JANE DOE, REPRESENTING THE BOARD OF DIRECTORS, DEFENDANTS–APPELLANTS.

BARBARA BEN–DAVID, AND ABDOLLAH YAMANI, INDIVIDUALLY AND ON BEHALF OF FORMER SUBSCRIBERS/PURCHASERS OF THE COMMON STOCK OF BRIDGE PLAZA CO–OP, INC., SIMILARLY SITUATED, PLAINTIFFS–RESPONDENTS, v. BRIDGE PLAZA CO–OP, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND BOARD OF DIRECTORS, JOHN DOE AND JANE DOE, REPRESENTING THE BOARD OF DIRECTORS, DEFENDANTS–APPELLANTS.

STANLEY AND DIANE HABER, INDIVIDUALLY AND ON BEHALF OF FORMER SUBSCRIBERS/PURCHASERS OF THE COMMON STOCK OF REGENCY CO–OP, INC., PLAINTIFFS–RESPONDENTS, v. REGENCY CO–OP, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND BOARD OF DI-

RECTORS, JOHN DOE AND JANE DOE, REPRESENTING THE BOARD OF DIRECTORS, DEFENDANTS–APPELLANTS.

---

BRUCE BRONSTER AND RUDOLPH MOSCA, INDIVIDUALLY AND ON BEHALF OF FORMER SUBSCRIBERS/PURCHASERS OF THE COMMON STOCK OF NORTHBRIDGE PARK CO-OP INC., SIMILARLY SITUATED, PLAINTIFFS–RESPONDENTS, v. NORTHBRIDGE PARK CO-OP, INC., A CORPORATION OF THE STATE OF NEW JERSEY AND BOARD OF DIRECTORS, JOHN DOE AND JANE DOE, REPRESENTING THE BOARD OF DI-RECTORS, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 10, 1997—Decided June 23, 1997.

16

18

Before Judges PETRELLA, WALLACE and KIMMELMAN.

*Richard E. Brennan* argued the cause for appellants (*Shanley & Fisher,* attorneys; *Mr. Brennan,* of counsel; *R. Scott Eichborn* and *Dona Feeney,* on the brief).

*Howard M. Nashel* argued the cause for respondents (*Nashel, Kates, Nussman, Rapone & Ellis,* attorneys; *Mr. Nashel, Joel M. Ellis,* and *Mukesh M. Patel,* on the brief).

The opinion of the court was delivered by

WALLACE, J.A.D.

This appeal presents an issue of first impression in New Jersey with respect to the validity of "flip fees," "flip taxes," "transfer fees," or "transfer taxes" (transfer fees) paid to a cooperative corporation when stock shares in cooperatives are transferred. Six class action suits against six cooperative apartment corporations in Fort Lee were filed in November 1989, and consolidated. Plaintiffs challenged the validity of transfer fees and sought refunds from defendants. On cross-motions for summary judgment, the motion judge held that the transfer fees were "invalidly promulgated" because all defendants had failed to provide for transfer fees in particular governing documents, as required by *N.J.S.A.* 14A:7–12(2). The remaining issues were tried before a different judge who found in favor of plaintiffs and entered an order for the return of all transfer fees charged plus interest.

On appeal defendants contend that (1) the transfer fees were valid; (2) the court erred in denying their request to change provisions of notices to class members; (3) they were entitled to recoupment; (4) the court failed to set forth a procedure for distribution of unclaimed funds; and (5) prejudgment interest was not warranted. In addition, in their reply brief defendants argue for the first time that in the alternative, this court's ruling should be made purely prospective. Except with regard to Northbridge Park Co-Op, Inc., and the computation of prejudgment interest, we affirm.

## I

Plaintiffs are present or former shareholders of one of the defendant cooperative corporations who seek the invalidation and return of the fees paid upon transfer of their shares. The six defendants are not-for-profit cooperative real estate corporations created before 1988 under the New Jersey Business Corporation Act, *N.J.S.A.* 14A:1–1 *et seq.*

The structure of cooperative apartment ownership is described in *Drew Assocs. of NJ v. Travisano,* 122 *N.J.* 249, 255–56, 584 *A.*2d 807 (1991). Briefly, a building owner becomes a sponsor by creating a corporate entity, which purchases the property and issues stock allocated according to the estimated relative value of each of the cooperative apartments. *Id.* at 255, 584 *A.*2d 807. Purchasers of shares acquire individual housing units and have an exclusive right of occupation, represented by a proprietary lease. *Ibid.* The tenant-shareholder pays a monthly carrying charge which represents a proportional share of the mortgage payment, common expenses, and taxes. *Ibid.*

Briefly, we now recite the facts pertinent to each defendant.

### *2100 LINWOOD AVENUE OWNERS, INC.*

2100 Linwood Avenue Owners, Inc. (2100 Linwood) filed its Certificate of Incorporation (Certificate) on January 22, 1982. In its Offering Statement filed with the Agency, the corporation

established a working capital fund for repairs, improvements, or other corporate purposes. The first amendment to the Offering Statement dated October 6, 1982, provided for a transfer fee:

> *Sale of Shares by Persons Other Than Sponsor*—Any seller of a block of shares and the Proprietary Lease [1] allocated thereto, other than the Sponsor, its designee, or the Apartment Corporation, shall pay, upon the first such sale, the sum of $1,500 to the Working Capital Fund of the Apartment Corporation.

This sum was changed to $500 by the second amendment to the Offering Statement dated January 5, 1983, and then to $1,000 by the third amendment, dated February 25, 1983. The fourth amendment dated July 22, 1983 provided that any original tenant-purchaser who had contracted to sell prior to the date of the third amendment would pay only a $500 fee.

The by-laws authorized the board of directors generally to determine the cash requirements of the cooperative. Specifically, the by-laws authorized the board of directors to "impose any maintenance or other charge (regular or special) for the purposes of making any capital or major improvement or addition, unless required by law," and to adopt rules for managing the affairs of the corporation as it deemed proper, provided those rules were not inconsistent with state law, the Certificate or the by-laws. The by-laws also authorized the board "to fix by resolution and to collect, before any assignment of a proprietary lease or any reallocation of shares takes effect, reasonable fees to cover the corporation's expenses and attorneys' fees in connection with such proposed assignment, or reallocation, or both, as the case may be." Effective September 1, 1993, the by-laws were amended to provide for a transfer fee of $5 per share. However, prior to the 1993 by-law amendment the by-laws did not expressly provide for transfer fees.

The proprietary lease provided in section 16 as a condition of assignment:

---

[1] "Proprietary lease" means "a grant of a long term exclusive right of possession and occupancy of a designated unit to a co-owner or a grant of a leaschold of the cooperative structure." *N.J.S.A.* 46:8D–3k.

All sums due from the Lessee shall have been paid to the Lessor, together with a sum to be fixed by the Directors to cover reasonable legal and other expenses of the Lessor and its managing agent in connection with such assignment and transfer of shares. . . .

The parties stipulated on December 2, 1994 that this plaintiff class paid transfer fees from 1984 to 1993 in the amount of $163,500.

## MEDITERRANEAN TOWERS WEST OWNERS, INC.

Mediterranean Towers West Owners, Inc. (Med West) filed its Certificate on March 21, 1980 and amended it in December 1989. Its Offering Statement was apparently dated August 5, 1980. The first amendment to the Offering Statement dated January 20, 1981 provided that one of its purposes was to amend the by-laws by adding a new Article XIV to require transfer fees. The amendment provided for a $500,000 increase in the Working Capital Fund and for a transfer fee of $1,500 on the first sale by a nonsponsor:

*Sale of Shares by Persons Other Than Sponsor.* Any seller of a block of shares and the Proprietary Lease allocated thereto, other than the Sponsor, its designee, or the Apartment Corporation, shall pay, upon the first such sale, the sum of $1,500.00 to the Working Capital Fund of the Apartment Corporation.

A Board Resolution approved September 10, 1984, increased the transfer fee to $2,500. According to resident Barry Cash, a board member between 1989 and 1991 and a current member at the time of his 1994 testimony, the admissions committee that interviewed prospective buyers routinely discussed the transfer fee. A handout letter also stated that a $2,500 transfer fee was to be paid at closing. The by-laws of Med West are similar in pertinent part to those of 2100 Linwood. The proprietary lease of Med West also contained a section similar to that of 2100 Linwood in that it provided for conditions of assignment, including certain fees on transfer to cover expenses. The parties stipulated that the plaintiff class for Med West paid transfer fees from 1983 to 1994 in the amount of $964,375.

## *1170 APARTMENT CORP.*

1170 Apartment Corp. (1170 Apartment) filed its Certificate on or about January 24, 1980. Its Offering Statement was not included in the record. It presented a notice of annual meeting of shareholders held May 19, 1986. One of the purposes of the meeting was to vote upon a resolution to amend the by-laws to add a new Article XI, not applicable to Sponsor sales:

> Notwithstanding any provision in these By–Laws to the contrary, upon any assignment, sale, transfer or reallocation of a block of shares and the Proprietary Lease allocated thereto, the Seller (Assignor) shall pay, to 1170 Apartment Corp., a transfer tax (flip tax) of Seventy Five (75¢) Cents per share, effective May 20, 1986, and a transfer tax (flip tax) of One ($1.00) Dollar per share, effective May 20, 1991.

A Board policy statement dated May 5, 1986 urged shareholder approval, describing the fee as "the least painful way to raise money from the Shareholder, since the transfer tax ... is paid from the proceeds of sale of an apartment by a departing Shareholder who in all probability is deriving substantial profit." Counsel for 1170 Apartment testified that the resolution was approved. He wrote to shareholders a letter dated May 21, 1986, announcing approval of the amendments along with results of the other votes taken at the meeting.

The by-laws of 1170 Apartment did not expressly address transfer fees. However, the by-laws are similar in pertinent part to those of 2100 Linwood. The proprietary lease also provided for conditions of assignment, including certain fees on transfer to cover expenses. The parties stipulated that this plaintiff class paid transfer fees from 1983 to 1994 in the amount of $448,543.

## *BRIDGE PLAZA CO–OP, INC.*

Bridge Plaza Co–Op, Inc. (Bridge Plaza) filed its Certificate on June 20, 1977. The Offering Statement is not part of the record. Defendants state on appeal that an initial $800 transfer fee was subsequently changed to the greater of either $2 per share or $800 per unit. They presented no evidence of either the initial imposition of transfer fees or the change.

The by-laws of Bridge Plaza were similar in pertinent part to those of 2100 Linwood. The proprietary lease, like that of 2100 Linwood, provided for conditions of assignment, including fees on transfer to cover reasonable legal and other expenses in connection with such assignment and transfer of shares. The parties stipulated that this plaintiff class paid transfer fees from 1984 to 1994 in the amount of $47,839.

## REGENCY CO-OP, INC.

Regency Co-Op, Inc. (Regency) filed its Certificate on June 27, 1972 and amended it on November 16, 1973. Its Offering Statement dated February 1, 1974 provided for a Reserve Fund for working capital, repairs and other purposes to be determined by the board of directors.

Regency claimed that an initial transfer fee of $1,500 was imposed by its board of directors in the early 1980s, but submitted no documentation. Regency's attorney, who also represented 1170 Apartment, testified that he wrote to shareholders on November 10, 1986 informing that the Board of Directors had recently unanimously passed a resolution adding a new section to the by-laws.

> Any seller, transferor, or assignor of a block of shares and the proprietary lease allocated thereto, other than the Sponsor or its designee, shall pay to Regency Co-op Inc. a sum equal to Six ($6.00) Dollars per share at or before any such sale, transfer or assignment.

The letter further stated that the board sought shareholder approval, and provided proxy ballots to be submitted by November 17, 1986. Regency's attorney estimated that the shareholders voted 95% to 97% in favor of the transfer fee.

The by-laws authorized fees on assignment or sublet of a proprietary lease or reallocation of shares, permitting the board "to fix a reasonable fee to cover actual expenses and attorneys' fees of the Corporation, a service fee of the Corporation and such other conditions as it may determine, in connection with each such proposed assignment." The proprietary lease provided for conditions of assignment, including payment of fees on transfer to cover

reasonable legal and other expenses in connection with such assignment and transfer of shares. The parties stipulated that this plaintiff class paid transfer fees from 1983 to 1994 in the amount of $162,782.

## NORTHBRIDGE PARK CO–OP, INC.

Northbridge Park Co–Op, Inc. (Northbridge) filed its Certificate in March 1979. There is no Offering Statement in the record. The by-laws of Northbridge were similar in pertinent part to those of 2100 Linwood. However, Northbridge amended its by-laws in March 1987 to provide in part that:

> The Board of Directors shall have the authority to fix by resolution and to collect, before any assignment of a proprietary lease and before any reallocation of shares take effect as against the Corporation as lessor such fees as the Board of Directors considers appropriate. Such fees may include a processing fee, attorney's fees, and a transfer fee.

At some time not determinable from the record, the Board of Directors passed a resolution effective December 1, 1986, providing that a seller must pay an administrative fee of $3 per share at the closing.

The proprietary lease provided procedures for the sale of shares but did not refer to a transfer fee. The parties stipulated that this plaintiff class paid transfer fees from 1986 to 1994 in the amount of $162,782.

As previously stated, the plaintiffs, seeking refund with interest of transfer fees paid by them, filed complaints. Between 1992 and 1993, a motion and a cross motion for summary judgment were filed. The motion judge found that transfer fees were not illegal *per se,* but that they were not validly authorized. He relied on *N.J.S.A.* 14A:7–12(2) to identify the Certificate, the by-laws, and the proprietary lease as the "governing documents" that determine the authority of the board and the rights and liabilities of shareholders in the cooperative. The judge found no New Jersey case law, but noted that New York had a history of reported cases in this area. After review of the New York law, he concluded that the New York Court of Appeals had essentially adopted the same

governing documents for cooperatives as New Jersey had identified in *N.J.S.A.* 14A:7–12(2).

The judge recognized that the by-laws of all defendants gave their boards great discretion in managing their affairs. In addition, the by-laws authorized the imposition of reasonable fees on assignment of lease and transfer of shares to cover expenses and attorney's fees. However, following the reasoning of the New York courts, he rejected reliance on such provisions for authority to impose a transfer fee, as opposed to compensation for incidental expenses incurred by the cooperative corporation.

Further, the judge rejected any reliance on the Offering Statement for such authority because the Offering Statement was not one of the governing documents identified in *N.J.S.A.* 14A:7–12(2). He contrasted this with the New York corporation law, which since 1986 expressly authorized the inclusion of a transfer tax in the Offering Statement. He concluded that, absent specific authorization in the Certificate, by-laws, or written agreement among the shareholders, or between each corporation and its shareholders, the transfer fees imposed by resolutions of a defendant's board of directors were invalid. He concluded that even where such authorization appeared in the by-laws, as it did in the Northbridge by-laws, the transfer fees were invalid because they conflicted with the proprietary lease.

The judge entered partial summary judgment for plaintiffs but left all other issues, including damages, waiver, and estoppel for trial.

The trial judge declined to revisit the partial summary judgment previously entered by the motion judge. He noted that the defenses of waiver and laches and a counterclaim for setoff had been withdrawn, leaving a counterclaim asserting equitable recoupment and equitable estoppel for trial.

Defendants presented evidence that several plaintiffs had advance notice that the fees were in place and that they had paid without protest. Plaintiffs challenged the evidence with testimony

from numerous shareholders that they had no choice in paying the transfer fees, no knowledge that they were illegal, and no awareness of any known benefits.

John Merkovsky, defendants' accounting expert, opined that payment of transfer fees by departing owners conferred a benefit on all remaining shareholders by adding to either operating funds or reserves. Plaintiffs' expert, Howard Gewirtz, characterized Merkovsky's method as one-dimensional and simplistic and opined that although any fees paid must confer some benefit on the corporation, the benefit to any individual shareholder was not calculable.

The trial judge accepted Gewirtz's opinion and found no offsetting claim. Further, the judge rejected the defenses of equitable recoupment and equitable estoppel. The judge awarded judgment in favor of plaintiffs in the stipulated amount of transfer fees, plus prejudgment interest. This appeal followed.

## II

Defendants argue that the trial judge erred in holding that the transfer fees were invalidly assessed.

The Planned Real Estate Development Full Disclosure Act (PREDFDA), *N.J.S.A.* 45:22A-21 to -56, effective November 22, 1978, applies to any housing cooperative. *N.J.S.A.* 45:22A-23h. Under PREDFDA a converting sponsor is required to register with the Division of Housing and Development in the State Department of Community Affairs (Agency), and to disclose information concerning the development in a public offering statement (Offering Statement) made available to prospective purchasers. *N.J.S.A.* 45:22A-26a. The form and contents of the Offering Statement must include a "proposed budget for the operation and maintenance of the common or shared elements or interests," *N.J.S.A.* 45:22A-28a(6), and any "[a]dditional information required by the [A]gency to assure full and fair disclosure to prospective purchasers," *N.J.S.A.* 45:22A-28a(7); *see also N.J.A.C.* 5:26-4.1

to –4.7. The Offering Statement must be simple and accurate. *N.J.S.A.* 45:22A–28d.

Defendants acknowledge that under PREDFDA, a developer is required to file its application for registration and Offering Statement with the Agency. *See Coastal Group v. Planned Real Estate Dev. Section,* 267 *N.J.Super.* 49, 56–57, 630 *A.*2d 814 (App.Div.1993) (describing regulatory functions). They do not dispute that they were created under, and are governed by, the New Jersey Business Corporation Act (NJBCA), including the restrictions on transfers of shares set forth in *N.J.S.A.* 14A:7–12(2) (hereinafter referred to as Section 12(2)). That section provides in pertinent part:

> Any reasonable restriction on the transfer or registration of transfer of shares ... may be enforced against the holder of the restricted securities.... Such restriction shall be valid only if imposed by the certificate of incorporation or by-laws ... or by a written agreement among any number of shareholders or among such holders and the corporation.

However, defendants contend that the requirement of Section 12(2) was broadly satisfied by the inclusion of transfer fee provisions in either the Offering Statement or the by-laws.

It is clear that reasonable restraints on alienation of cooperative units may be valid. *Drew Assocs. of NJ v. Travisano,* 235 *N.J.Super.* 194, 206–07, 561 *A.*2d 1177 (App.Div.1989), *aff'd in pertinent part,* 122 *N.J.* 249, 584 *A.*2d 807 (1991). Cooperative housing interests, like condominium interests, are properly characterized as realty. *Estate of Ahrens v. Edgewater Colony, Inc.,* 267 *N.J.Super.* 83, 87, 630 *A.*2d 832 (App.Div.1993).

The trial judge impliedly found that the transfer fee requirement constituted a reasonable restriction on transfer expressly permitted only if it complied with the requirements of Section 12(2). However, we have considerable doubt whether transfer fees are the kind of restriction encompassed within the requirements of Section 12(2).

The specific kinds of restrictions authorized by the NJBCA include first-option arrangements, buy-sell agreements, consent

restraints, and reasonable prohibitions against transfer to designated persons or classes. *Castriota v. Castriota,* 268 *N.J.Super.* 417, 423–24, 633 *A.*2d 1024 (App.Div.1993); *see N.J.S.A.* 14A:7-12(3); *Hill v. Warner, Berman & Spitz, P.A.,* 197 *N.J.Super.* 152, 164–65, 484 *A.*2d 344 (App.Div.1984). Restraints on alienation of property were historically disfavored because they are antithetical to the freedom of the marketplace. *Castriota v. Castriota, supra,* 268 *N.J.Super.* at 423, 633 *A.*2d 1024. By expressly permitting reasonable restrictions on transfers of stock, Section 12(2) supports the view that stock in a small corporation not only is property, but also creates a personal relation analogous to a partnership. *Ibid.* While *Castriota* held that a total and absolute prohibition against alienation of stock was unreasonable and contrary to public policy, it noted that reasonable restrictions are generally upheld. *See id.* at 423–24, 633 *A.*2d 1024.

The trial judge found no legal precedent in this state on this issue and noted that New York had a history of reported cases concerning transfer fees for cooperatives. The trial judge relied largely on in *Fe Bland v. Two Trees Management Co.,* 66 *N.Y.*2d 556, 498 *N.Y.S.*2d 336, 489 *N.E.*2d 223 (1985). In that case the New York Court of Appeals held that a transfer fee that conformed both to the proprietary lease and the Business Corporation Laws (BCL) could be adopted. However, the New York court noted that a transfer fee could not be imposed by a board of directors absent clear authorization in the Certificate, the by-laws, or the proprietary lease, and that a transfer fee had to be in proportion to the number of shares sold. *Id.* at 338, 489 *N.E.*2d at 225. It further found that the provision of the BCL section 501(c) (Section 501(c)) that "each share shall be equal to every other share of the same class" invalidated transfer taxes that differed, not solely based on the number of shares, but depending upon whether the assignor was a purchaser from the sponsor or an outsider and whether the assignor had been an owner for five years or more. *Id.* at 342, 489 *N.E.*2d at 229. It also rejected reliance on provisions of proprietary leases for board determination of cash requirements because the transfer taxes there violated

proportionality requirements and approval procedures imposed by the leases themselves.  *Id.* at 341, 489 *N.E.*2d at 228.

Subsequent to the *Fe Bland* decision, the New York legislature amended Section 501(c) to provide:

> [S]hares of the same class shall not be considered unequal because of variations in fees or charges payable to the corporation upon sale or transfer of shares and appurtenant proprietary leases that are provided for in proprietary leases, occupancy agreements or offering plans or properly approved amendments to the foregoing instruments.
>
> [1986 *New York Laws,* c. 598, § 1; *see Vaughn v. Manor Towers Owners Corp.,* 135 *A.D.*2d 380, 521 *N.Y.S.*2d 680, 681 (1987).]

This amendment was expressly made retroactive.  1986 *New York Laws,* c. 598, § 2; *Vaughn, supra,* 521 *N.Y.S.*2d at 682.

Absent New Jersey precedent, it is appropriate to look to out-of-state cases for guidance.  *See C.A.M. v. R.A.W.,* 237 *N.J.Super.* 532, 535, 568 *A.*2d 556 (App.Div.), *appeal dismissed,* 127 *N.J.* 285, 604 *A.*2d 109 (1990).  While New Jersey has no statute comparable to New York's Section 501(c), we agree with the view expressed in *Fe Bland* that the relationship between a cooperative and its shareholders should be determined by its Certificate, by-laws, and proprietary lease and that the documents must be read together.  These documents give reasonable notice to the shareholder of his or her obligations and responsibility as a cooperative shareholder.  However, contrary to New York's Section 501(c), our Section 12(2) does not address the specific issue of transfer fees.  We reject defendants' contention that Section 12(2) should be read broadly to approve transfer fees that were not provided for in either the Certificate, the by-laws, or the proprietary lease.

Defendants contend that the trial judge read the NJBCA too narrowly and disregarded the filing requirements of PREDFDA. They further contend that all transfer fees were valid under the boards' broad grant of authority to manage their corporate affairs as provided in the by-laws to support the validity of the transfer fees.  Except with respect to Regency, the by-laws of defendants authorized the boards to amend the by-laws, determine cash

requirements, impose regular or special charges for operators or improvements, adopt rules for the management of corporate affairs, and fix and collect fees to cover expenses in connection with the assignment of leases. Defendants argue that these by-laws provide the boards with wide authority to impose a transfer fee within their own business judgment. We disagree with these contentions.

Moreover, a by-law permitting the fixing of reasonable fees for expenses incurred in connection with lease assignments and share transfers does not empower the boards to impose transfer fees unrelated in amount and purpose to the transactions. *See Fe Bland, supra,* 498 *N.Y.S.*2d 336, 489 *N.E.*2d at 227–28 (express authority to fix reasonable fee to cover actual expenses and attorney fees for assignment of lease failed to authorize other fees of unspecified kind). The trial judge properly rejected defendants' contention in this regard.

Equally unpersuasive is the contention that the business judgment rule justifies defendants' decision to impose transfer fees. The business judgment rule bars judicial inquiry into the decisions of the board of directors made in good faith. *See Maul v. Kirkman,* 270 *N.J.Super.* 596, 614, 637 *A.*2d 928 (App.Div.1994). However, that rule applies where the board is authorized to make the decision. The business judgment rule does not apply to decisions that are beyond the limits of the by-laws.

Both 2100 Linwood and Med West also rely on the Offering Statement to support the validity of the transfer fees. The trial judge rejected their reliance on the Offering Statement because Section 12(2) does not list the Offering Statement as one of the sources of restrictions on transfers of shares. As we noted above, Section 12(2) does not control here, but rather the transfer fees must be provided for in the Certificate, the by-laws, or the proprietary lease.

Under the NJBCA, any provision "require[d] or permit[ted] to be set forth in the by-laws may be set forth in the

certificate with equal force and effect." *N.J.S.A.* 14A:2–9(3). In contrast, the Offering Statement is a requirement of PREDFDA, which was "enacted to require full and fair disclosure in the sale of condominiums" and other planned unit developments. *Calvert v. K. Hovnanian at Galloway, VI, Inc.,* 128 *N.J.* 37, 40, 607 *A.*2d 156 (1992). It requires developers to submit detailed registration applications, and to disclose to prospective purchasers specified information in an Offering Statement. *Ibid.; see N.J.S.A.* 45:22A–26(d) ("The developer shall make copies of the public offering statement freely available to prospective purchasers prior to the contract date of disposition."). While the inclusion of transfer fee provisions in an Offering Statement may well constitute constructive notice to initial buyers, unlike the by-laws or proprietary lease, it does not represent any contractual agreement between the shareholder and the cooperative. PREDFDA imposes duties on the developer, not on the corporation. Further, these duties cease when the developer no longer retains any interest in or obligation to the development. *N.J.S.A.* 45:22A–31; *see also N.J.S.A.* 45:22A–37a (developer liable to purchaser for untruths in registration application or Offering Statement). We agree with the trial judge that the Offering Statement is not a controlling document to validate a transfer fee.

■ Med West relies on a September 10, 1984 resolution of the board of directors which increased the transfer fee from $1,500 to $2,500. However, there is no indication that the resolution effectively amended the by-laws. It did not purport to do so. More importantly, under its by-laws a two-thirds vote of the shareholders was required to amend the by-laws. There was no evidence that such a shareholder vote occurred.

Northbridge also relies on a by-law amendment to support its transfer fee. The trial judge in rejecting this reliance noted that "apart from other reasons expressed in plaintiffs' original brief," Northbridge's by-law amendment imposing a transfer fee "conflicts with the proprietary lease and is therefore invalid." The

judge did not explain what the other reasons were, or whether he rested his decision on them.

Northbridge's board of directors unanimously passed a resolution effective December 1, 1986, that "upon the sale of an apartment, the seller must pay an administrative fee of $3 per share at the closing." Plaintiffs seem to concede that this resolution was authorized by the by-laws and would have been valid except that Section 12(2) required shareholder approval. Additionally, the proprietary lease was not amended to reflect the obligations to pay transfer fees, rendering the lease in conflict with the by-laws. Defendants argue that there is no conflict because the lease was silent on transfer fees.

We noted above that Section 12(2) is not controlling. Further, the absence from the lease of any mention of transfer fees should not limit a valid by-law. As a New York court noted in *1326 Apartments Corp. v. Barbosa,* 147 *Misc.*2d 264, 555 *N.Y.S.*2d 560 (Civ.Ct.1990), "nowhere in the *Fe Bland* decision does the Court hold that a properly adopted corporate resolution amending by-laws may not impose a [transfer] tax," even if the transfer tax provision does not appear in the proprietary lease. *Id.,* 555 *N.Y.S.*2d at 562; *see Quirin v. 123 Apartments Corp.,* 128 *A.D.*2d 360, 516 *N.Y.S.*2d 218, 221 (transfer tax valid where provided for in by-laws and not specifically excluded by lease or certificate of incorporation), *appeal dismissed,* 70 *N.Y.*2d 796, 522 *N.Y.S.*2d 112, 516 *N.E.*2d 1225 (1987); *see also Plaza Road Cooperative, Inc. v. Finn,* 201 *N.J.Super.* 174, 179–80, 492 *A.*2d 1072 (App.Div.1985) (Certificate, by-laws, and occupancy agreement must be read together to define relationship between parties) (citing *Earl W. Jimerson Housing Co. v. Butler,* 97 *Misc.*2d 563, 412 *N.Y.S.*2d 560, 562 (N.Y.City Civ.Ct.1978), *rev'd on other grounds,* 102 *Misc.*2d 423, 425 *N.Y.S.*2d 924 (N.Y.Sup.1979)).

The Northbridge by-laws expressly authorized the transfer fees and there was no restriction in the property lease. In our view, it was not necessary to include the transfer fee in the proprietary lease in order to validate the by-law provision for

transfer fees. Consequently, it was error for the trial judge not to approve the transfer fees for Northbridge.

1170 Apartment and Regency now seek to rely on certain 1986 shareholder votes modifying transfer fees, which they contend effectively amended their respective by-laws. However, despite discovery requests, defendants failed to produce evidence of these votes before the entry of a partial summary judgment by the motion judge. Nearly two years later, defendants sought reconsideration of the partial summary judgment in favor of plaintiffs.

Defendants presented a May 19, 1986 notice of a proposed shareholder vote at 1170 Apartment to add a new Article XI to the by-laws imposing a transfer fee and a May 21, 1986 letter to shareholders from 1170 Apartment's attorney announcing passage. They also presented a November 10, 1986 letter from Regency's attorney to its shareholders announcing Board approval of an amendment to the by-laws authorizing the imposition of a transfer fee.

The attorney representing both 1170 Apartment and Regency explained that he had known for a long time that the documents existed but could not locate the documents. He knew about the votes at the time the summary judgment motion was argued before the motion judge, but did not recall supplying the documentation then or being asked to do so.

The trial judge was disturbed by the tardy production of documents apparently known to exist and later found in storage without any particular difficulty. He expressed grave reservations "with regard to production of the documents and how their existence has been disclosed." The judge noted that both the purported new Article XI of the by-laws of 1170 Apartment, and the purported new section 8 to Article V of the by-laws of Regency were merely undated typewritten single sheets of paper unattached to any printed by-laws. Further, the judge was unable to make findings as to when they were even typed. He concluded

that defendants' failure to produce the documents earlier consti-
tuted inexcusable neglect. He further concluded that because the
documents were eventually found by the attorney for 1170 Apart-
ment and Regency in his own file storage, the amendments were
not kept in any book and were only available to the attorney prior
to their being revealed. Since plaintiffs had no timely notice of
existence of the documents, the judge held that they were not
bound by them. Consequently, the judge denied defendants'
motion to revisit the order of partial summary judgment.

An interlocutory order such as the partial summary judgment
order entered by the motion judge nullifying the transfer fees is
subject to review in the sound discretion of the trial court and in
the interest of justice. *R.* 4:42–2; *see Johnson v. Cyklop Strap-
ping Corp.,* 220 *N.J.Super.* 250, 264–65, 531 *A.*2d 1078 (App.Div.
1987), *certif. denied,* 110 *N.J.* 196, 540 *A.*2d 189 (1988). Under the
circumstances here we find no abuse of discretion. There was
ample support for the trial judge's conclusion that the documents
produced by the attorney for 1170 Apartment and Regency were
not only inexcusably late, but also that the shareholders had no
knowledge of them.

### III

We find no merit in defendants' estoppel and equitable recoup-
ment arguments. *R.* 2:11–3(e)(1)(A) and (E).

### IV

Defendants also argue that the trial judge erred by denying
their requests to require class members to acknowledge receipt of
their mailed notices of pending action and to permit defendants
some discovery of unnamed plaintiffs. We reject these argu-
ments.

At a pre-trial hearing on May 27, 1994, defendants argued that
each class member to whom a "Notice of Pendency of Class Action
and Class Action Determination" was to be sent via regular mail

should be asked to acknowledge receipt by returning an envelope with prepaid postage in order to determine the number of class members actually found. They also argued that the recipients should be informed that they might be subject to discovery. The court refused to require either and ruled that no discovery would be allowed from unnamed class members. The parties entered into a consent order regarding the form of notice to be mailed to class members. This order was signed on July 1, 1994 by the trial judge. The consent order provided the parties reached agreement that notice would be given to class members by first class mail and by publication.

Notice to members of the class is controlled by *R.* 4:32–2, which is "clearly intended to give the trial judge broad powers in managing class actions." *Towpath Unity Tenants Ass'n v. Barba,* 182 *N.J.Super.* 77, 84, 440 *A.*2d 51 (App.Div.1981). The notice required is "the best notice practicable under the circumstances, consistent with due process of law." *R.* 4:32–2(b). There is no mandatory individual notice requirement. *See* Pressler, *Current N.J. Court Rules,* comment on *R.* 4:32 at 1227 (1997). "[P]ublication and representative notice and such other forms of constructive notice as will meet the constitutional tests of due process under the circumstances presented will be permitted." *Ibid.*

Moreover, an order consented to by attorneys for each party is ordinarily not appealable. *Winberry v. Salisbury,* 5 *N.J.* 240, 255, 74 *A.*2d 406, *cert. denied,* 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950); *Mack Auto Imports, Inc. v. Jaguar Cars, Inc.,* 244 *N.J.Super.* 254, 257, 581 *A.*2d 1372 (App.Div.1990). This rule is especially applicable to the discovery issues involved here, which were largely mooted by the subsequent trial.

Defendants argued below as they do on appeal that discovery of unnamed plaintiffs was needed to support their fact-sensitive defenses of estoppel, waiver and laches. *See Towpath Unity Tenants Ass'n v. Barba, supra,* 182 *N.J.Super.* at 84–85, 440 *A.*2d 51. However, defendants abandoned their equitable defenses of waiver and laches below. On appeal, they rely on an estoppel

defense only with respect to the shareholder votes at 1170 Apartment and Regency. However, that defense did not depend on any shareholder testimony. Further, defendants fail to explain how their counterclaim for equitable recoupment, which they assert is also fact-sensitive, would have been supported by the kind of information they hoped to gain through discovery of unnamed class members. Therefore, we find no abuse of discretion in the form of notice required or in the trial judge's denial of defendants' request for discovery.

V

Defendants argue that the judgment failed to provide a mechanism for distribution of unclaimed funds and that the proper procedure would be reversion of the funds to them. Plaintiffs urge that this issue must still be decided by the trial judge but propose no particular scheme.

The trial judge awarded damages in the total stipulated amount of the transfer fees. The notice sent to class members provided that, unless they excluded themselves, class members would be eligible to receive an award, but, "[i]n order to receive this award, if one is made, you must notify plaintiffs' attorney of any change of address or if your present address is different from the address to which this notice was mailed."

While we have found no New Jersey case considering this issue, it has frequently been addressed by federal courts. *See generally* Tim A. Thomas, Annotation, *Permissible Methods of Distributing Unclaimed Damages in Federal Class Action,* 107 *A.L.R. Fed.* 800 (1992). Federal courts have broad discretionary powers in determining distribution plans for unclaimed class action funds, guided by the objectives of the underlying statute and the interests of the silent class members. *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 *F.*2d 1301, 1307 (9th Cir.1990).

■■■■■■ In general the choices include cy-pres, escheat, and reversion to defendants. The equitable doctrine of cy-pres per-

mits distribution of excess class action damage or settlement funds to the "next best" class, in order to parallel the intended use of the funds as nearly as possible. *Democratic Cent. Comm. v. Washington Metropolitan Area Transit Comm'n*, 84 *F.*3d 451, 455 (D.C.Cir.1996). Such distribution does not subject defendants to greater liability or alter their substantive rights, because it affects interests of silent class members only. *Six (6) Mexican Workers*, *supra*, 904 *F.*2d at 1307. Escheat promotes the goals of disgorgement and deterrence when cy-pres is inappropriate. *Id.* at 1308. Reversion to defendant may be proper where the defendant could not have anticipated its liability and deterrence is not a goal. *Ibid.*

█ Here, defendants had a reasonable belief in their authority to assess transfer fees; plaintiffs did not even pay under protest. Return of excess funds to a defendant is appropriate in a private action for breach of contractual duties, where the defendant acted without malice or bad faith. *Van Gemert v. Boeing Co.*, 739 *F.*2d 730, 737 (2d Cir.1984). Moreover, under the special circumstances of this case, reversion to defendants would coincide with a cy-pres remedy, because it would benefit current shareholders who constitute the "next best" class. Thus, the order entered should be interpreted to provide for reversion to defendants of any unclaimed funds.

## VI

█ Finally, defendants argue that the trial judge erred by awarding prejudgment interest. Prejudgment interest may be awarded on contract claims in the discretion of the court in accordance with equitable principles. *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 *N.J.* 464, 478, 541 *A.*2d 1063 (1988); *see Bak–A– Lum Corp. of America v. Alcoa Bldg. Prods., Inc.*, 69 *N.J.* 123, 131, 351 *A.*2d 349 (1976); *Coastal Group, Inc. v. Dryvit Sys., Inc.*, 274 *N.J.Super.* 171, 181, 643 *A.*2d 649 (App.Div.1994). Such an exercise of discretion should not be disturbed on appeal unless it represents a manifest denial of justice. *Coastal Group, supra*, 274

*N.J.Super.* at 181, 643 *A*.2d 649; *County of Essex v. Waldman,* 244 *N.J.Super.* 647, 667, 583 *A*.2d 384 (App.Div.1990), *certif. denied,* 126 *N.J.* 332, 598 *A*.2d 890 (1991).

The equitable purpose of prejudgment interest is to compensate a party for lost earnings on a sum of money to which it was entitled, but which has been retained by another. *Rova Farms Resort, Inc. v. Investors Ins. Co. of America, supra,* 65 *N.J.* at 506, 323 *A*.2d 495. It is not meant to be punitive, but rather, it is a payment for the use of money. Pressler, *Current N.J. Court Rules,* comment 8 on *R.* 4:42–11 (1997). We find no abuse of discretion in the trial judge's conclusion to award prejudgment interest.

However, as defendants point out, plaintiffs did not protest the transfer fees at the time they were paid. It appears that both defendants and plaintiffs believed that the transfer fees were validly demanded. Under these circumstances, prejudgment interest should not have been awarded from the date the transfer fees were paid but rather from the date the complaints were filed, i.e., November 5, 1989. *Cf. R.* 4:42–11(b) (in tort actions, interest runs from the date of institution of action or from date six months after the cause of action arose, whichever is later). Except for this minor adjustment, we find no abuse of discretion in the award of prejudgment interest.

Further, we find no merit to defendants' contention that award of prejudgment interest was premature because it was announced before plaintiffs moved for it. The record shows that plaintiffs' counsel informed the court, both in opening and in summation, that plaintiffs would seek interest if they received a favorable verdict.

## VII

In their reply brief, defendants argue for the first time that, if we affirm, the decision should be applied prospectively only. However, this issue was not raised below and was not raised in the

plenary brief on appeal. It is improper to raise this issue initially in the reply brief. *Township of Warren v. Suffness,* 225 *N.J.Super.* 399, 412, 542 *A.*2d 931 (App.Div.), *certif. denied,* 113 *N.J.* 640, 552 *A.*2d 166 (1988). Consequently, we decline to address defendants' request to apply the judgment prospectively.

## VIII

We reverse the judgment against Northbridge. In all other respects, we affirm and remand for the trial judge to recalculate prejudgment interest from the date of the filing of the complaint.